IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

COLUMBIA SPORTSWEAR NORTH
AMERICA, INC., an Oregon corporation,

        Plaintiff,

   v.

SEIRUS INNOVATIVE ACCESSORIES,
a Utah corporation,

        Defendant.

No. 3:15-cv-00064-HZ

OPINION & ORDER

Devon Zastrow Newman
David W. Axelrod
Schwabe Williamson & Wyatt, PC
1211 SW Fifth Avenue, Ste. 1800
Portland, OR 97204

    Attorneys for Plaintiff

OPINION & ORDER - 1

Eric M. Jaegers
Troutman Sanders LLP
11682 El Camino Real, Ste. 400
San Diego, CA 92130

Matthew D. Murphey
Troutman Sanders LLP
5 Park Plaza , Ste. 1400
Irvine, CA 92614

Paul E. McGowan
Troutman Sanders LLP
600 Peachtree St. NE, Ste. 5200
Atlanta, GA 30308

Lisa D. Hardie
Troutman Sanders LLC
805 SW Broadway, Ste. 1650
Portland, OR 97205

Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff, Columbia Sportswear North America, Inc. ("Columbia"), alleges that Defendant Seirus Innovative Accessories, Inc. ("Seirus"), a Utah corporation with a principal place of business in California, has infringed Columbia's patents related to a heat reflective lining for outdoor sporting gear. Currently before the Court is Seirus's motion to dismiss for lack of personal jurisdiction, or alternatively, to transfer venue to the Southern District of California. The Court has personal jurisdiction over Seirus because it intentionally targeted the forum by selling allegedly infringing products directly to Oregon retailers. Also, since the multi-factor analysis which guides the Court's decision to transfer venue is essentially balanced between the parties, the Court defers to Columbia's choice of venue. Accordingly, Seirus's motion is denied.

//

//

OPINION & ORDER - 2

BACKGROUND

Columbia is a Portland, Oregon based outdoor company with more than $2.1 billion in global annual sales. Plaintiff's Response to Motion to Dismiss/Transfer Venue ("Pl. Resp.") at 3. Columbia owns and controls U.S. Patent Nos. D657,093 (" '093 patent"), 8,424,119 (" '119 patent), and 8,453,270 (" '270 patent"). Complaint ("Compl.") ¶ 2. Collectively, those patents protect Columbia's Omni-Heat technology, a heat reflective material that retains body heat but allows for breathability and moisture wicking. Compl. ¶ 2. The Omni-Heat material is used as a lining in a variety of outdoor gear such as jackets, shirts, gloves, and more. Compl. ¶ 2.

Seirus is a Utah corporation with a principal place of business in Poway, California. Compl. ¶ 5. Seirus sells its own brand of cold weather gear, including gloves and glove liners with a breathable, heat reflective material it calls HEATWAVE. Compl. ¶¶ 20–21. Columbia alleges that Seirus's HEATWAVE product infringes its Omni-Heat patents, and that Columbia purchased gloves featuring Seirus's HEATWAVE product at various stores in Oregon. Complat ¶¶ 25, 26–47.

Before it could substantiate Seirus's products were available for purchase in Oregon, Columbia filed a patent infringement action against Seirus in December, 2013, in the Western District of Washington. Compl. ¶ 9. Seirus filed a similar motion to dismiss for lack of personal jurisdiction because, it argued, it lacked any meaningful contacts with the forum. Defendant's Memorandum in Support of Motion to Dismiss ("Def. Memo."), at 8. Columbia sought leave to conduct jurisdictional discovery, but the court denied the motion and ordered Columbia to respond to Seirus's motion to dismiss or transfer venue. Compl. ¶ 13. In the interim, Columbia confirmed that Seirus's HEATWAVE products were available in Oregon. Compl. ¶ 12. Since Seirus had yet to file an answer in the Washington case, Columbia promptly filed a notice of

dismissal under Federal Rule of Civil Procedure ("Rule") 41(a), and subsequently filed the instant action in the District of Oregon. Compl. ¶ 15–16.

Seirus now moves to dismiss for lack of personal jurisdiction because it lacks the "minimum contacts" with Oregon required to support a constitutional exercise of this Court's personal jurisdiction over it. Alternatively, Seirus seeks to transfer this case to the Southern District of California because it is a more convenient forum.

## STANDARDS

I.   Personal Jurisdiction

Federal Circuit law, rather than regional circuit law, determines whether a district court has personal jurisdiction over the defendant in a patent infringement case. Avocent Huntsville Corp. v. Aten Intern. Co. Ltd., 552 F.3d 1324, 1328 (Fed. Cir. 2008). If the parties have not conducted discovery, the plaintiff need only make a prima facie showing that the defendant is subject to personal jurisdiction. Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201 (Fed. Cir. 2003). In evaluating a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the court construes the pleadings and affidavits in the light most favorable to the non-moving party. Graphics Controls Corp. v. Utah Med. Products, Inc., 149 F.3d 1382, 1383 n.1 (Fed. Cir. 1998).

Personal jurisdiction over an out-of-state defendant in a patent-related dispute involves two questions: whether jurisdiction exists under the forum state's long-arm statute, and if so, whether asserting personal jurisdiction is consistent with the limitations of the Due Process Clause of the federal Constitution. Trintec Indus., Inc. v. Pedre Promotional Products, Inc., 395 F.3d 1275, 1279 (Fed. Cir. 2005). These inquiries essentially merge because Oregon's long-arm statute extends jurisdiction to the outer limits of due process. Invellop, LLC v. Bovino, No. 3:14-cv-00033-SI, 2014 WL 3478866, at *2 (D. Or. July 11, 2014); see also Trintec, 395 F.3d at 1279

OPINION & ORDER - 4

("collaps[ing]" the two-part inquiry where a state's long arm statute is coextensive with the limits of due process).

The Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471–72 (1985) (internal quotation marks and citation omitted). To satisfy this due process protection, the plaintiff must show that the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). "The requirement for purposeful minimum contacts helps ensure that non-residents have fair warning that a particular activity may subject them to litigation in the forum." Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1565 (Fed. Cir. 1994) (citations omitted).

"Under the 'minimum contacts' test, a defendant may be subject to either specific jurisdiction or general jurisdiction." LSI Indus. Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed.Cir. 2000). A court has general jurisdiction over a nonresident defendant when that defendant has "continuous and systematic" contacts with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984). A court has specific jurisdiction where "the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." Burger King, 471 U.S. at 472 (internal quotation marks and citations omitted); see also Beverly Hills Fan Co., 21 F.3d at 1563 n.10 (citation omitted). Thus, in "contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Goodyear Dunlop Tires

Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011) (internal quotation marks and citation omitted).

A district court can exercise specific personal jurisdiction over a defendant subject to a three-part test. First, the defendant must have purposefully directed its activities at residents of the forum. Second, the plaintiff's claim must arise out of or relate to those activities. And third, the exercise of personal jurisdiction must be reasonable and fair. Autogenomics, Inc. v. Oxford Gene Tech. Ltd., 566 F.3d 1012, 1018 (Fed. Cir. 2009) (citing Breckenridge Pharm., Inc. v. Metabolite Labs, Inc., 444 F.3d 1356, 1363 (Fed. Cir. 2006)). Under this test, a court may properly assert specific jurisdiction "even if the contacts are isolated and sporadic," so long as the cause of action arises out of or relates to those contacts. Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1200 (Fed. Cir. 2003) (citing Burger King, 471 U.S. at 472–73). The plaintiff bears the burden at step one and two, but the burden shifts to the defendant at step three to prove that personal jurisdiction is unreasonable. Grober v. Mako Prods., Inc., 686 F.3d 1335, 1346 (Fed. Cir. 2012).

II.     Transfer Venue

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In determining whether transfer is proper, the Federal Circuit applies regional circuit law. In re Link_A_Media Devices Corp., 662 F.3d 1221, 1222–23 (Fed. Cir. 2011). For purposes of adjudicating a Rule 12(b)(3) motion, the court resolves factual conflicts and draws all reasonable inferences in favor of the non-moving party. Benchmade Knife Co. v. Benson, No. CIV. 08-967-HA, 2010 WL 988465, at *4 (D. Or. Mar. 15, 2010) (citing Murphy v. Schneider National, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004)).

OPINION & ORDER - 6

DISCUSSION

I.     Personal Jurisdiction

Columbia concedes that Seirus is not subject to general jurisdiction in this district. Instead, Columbia relies on specific jurisdiction and argues that Seirus has "directed its commercial activities to Oregon," through both direct sales of infringing and other products in the state and its sales to national vendors with outlets in Oregon. Pl. Resp. at 11–12.

Seirus admits it first sold an accused HEATWAVE product directly to an Oregon retailer in December of 2013. Def. Memo. at 4. Since that first sale, Seirus admits it sold a total of $798 of the accused products directly to specialty stores such as ski shops and hunting stores in Oregon, a mere 0.0014% of its total sales in the same period. Id. Seirus contends that these direct sales amount to only an "attenuated affiliation" that cannot support personal jurisdiction in this District. Def. Reply at 3–4.

The value of Seirus's direct sales in Oregon may be small, but there is no dispute that Seirus has sold products directly into the forum, and that Columbia's suit arises out of or relates to those sales. That is all that is required for Columbia to make a prima facie showing that the Court has personal jurisdiction over Seirus. See Patent Enforcement Group, LLC v. Chassis Tech, LLC, No. 3:11-cv-925-BR, 2012 WL 12678, at *5 (D. Or. Jan 3, 2012) (finding direct sales totaling less than $1,000 over twelve year span sufficient for specific personal jurisdiction because defendant "anticipat[ed] that the allegedly infringing products would be sold to customers in Oregon."); Fujitsu Ltd. v. Belkin Intern., Inc., 782 F. Supp. 2d 868, 883 (N.D. Cal. 2011) (finding personal jurisdiction in a patent infringement case where defendant made direct sales into the forum five years prior to filing suit). Notably, Seirus admits to making its first direct sale of the allegedly infringing product to an Oregon retailer on or about December 20, 2013, approximately three weeks after Columbia had filed its first patent infringement suit

against Seirus in the Western District of Washington. Seirus was, therefore, on notice that Columbia was the owner of the allegedly infringed patents, was a citizen and resident of Oregon, and was the party who would be injured by Seirus's ongoing infringement. After Columbia had already sued it for patent infringement, Seirus sold and shipped its allegedly infringing products directly to retailers in Columbia's home state. Given its conduct in the face of Columbia's pending lawsuit, Seirus surely could have "reasonably anticipated being haled into court" here. Avocent, 552 F.3d at 1330 (quoting Burger King, 471 U.S. at 474).

Finally, the third element of the test for specific personal jurisdictions requires the exercise of such jurisdiction be "reasonable and fair." Autogenomics, Inc., 566 F.3d at 1018. "The Supreme Court advises that the third factor applies only sparingly," and thus the defendant bears a substantial burden at this step to make a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." Nuance Commc'ns, Inc. v. Abbyy Software House, 626 F.3d 1222, 1231 (9th Cir. 2010) (quoting Burger King, 471 U.S. at 477); see also Akro Corp. v. Luker, 45 F.3d 1541, 1549 (Fed. Cir. 1995) (stating that "defeats of otherwise constitutional personal jurisdiction 'are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.' ") (quoting Beverly Hills Fan Co., 21 F.3d at 1568).

In examining "reasonableness," courts "consider five factors: (1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive social policies." Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind.

Com de Equip. Medico, 563 F.3d 1285, 1299 (Fed. Cir. 2009) (quoting Burger King, 471 U.S. at 477).

Seirus asserts that it would be unfair and unreasonable to subject it to this Court's jurisdiction. Its officers and documents are located in California approximately 1,000 miles from the District of Oregon, and Seirus argues it will be uniquely burdened by litigating this matter in Oregon, given the small revenues generated from sales here and that Seirus is a "small company." Def. Reply at 12. But those reasons do not constitute the compelling showing required to override the exercise of otherwise constitutional jurisdiction in this case. Seirus admits to doing business in this forum, both directly and indirectly through sales to national retailers. Columbia has a strong interest in adjudicating in this forum, its home state, a harm felt here that was caused by Seirus's intentional conduct directed at this forum. The State of Oregon has the same interest as other states in "ensuring that its citizens are not harmed by nonresidents though patent infringement." Patent Enforcement Group, LLC, 2012 WL 12678 at *7. Seirus is located in a neighboring jurisdiction, and the parties can use electronic document production and take depositions of Seirus's witnesses in more convenient locations.

Because Columbia has established a prima facie case that Seirus has sufficient minimum contacts with Oregon that are related to Columbia's claims, and because Seirus has failed to show that the exercise of personal jurisdiction would be unreasonable or unfair, Seirus's motion to dismiss for lack of personal jurisdiction is denied.

II.     Transfer of Venue

Courts employ a two-step analysis when determining whether transfer is proper. First, a court must ask "whether the transferee district was one in which the action might have been brought by the plaintiff." Hoffman v. Blaski, 363 U.S. 335, 343–44 (1960). Second, if the

moving party makes this threshold showing, the district court has "discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (citing Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988)) (quotation marks omitted).

The Ninth Circuit has identified a number of public and private interest factors that a district court may consider, including: (1) the plaintiff's choice of forum, (2) the parties contacts with the forum, (3) convenience to the parties, (4) convenience to the witnesses, (5) availability of compulsory process for non-party witnesses, (6) ease of access to evidence, (7) differences in the costs of litigation in the two forums, (8) familiarity of each forum with the applicable law, (9) local interest in the controversy, and (10) the relative court congestion and time of trial in each forum. Id. at 498–99 (citing Stewart, 487 U.S. at 29–31); Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986); Robertson v. Standard Ins. Co., No. 3:14-CV-01572-HZ, 2014 WL 7240682, at *2 (D. Or. Dec. 16, 2014).

First, the Court finds that this action could have been brought in Seirus's proposed alternative forum, the Southern District of California, because Seirus has its principal place of business there and is subject to that court's general personal jurisdiction. As for the weighing of factors, the Court finds that many are neutral. Both this Court and the Southern District of California are equally able to adjudicate patent infringement matters. Both parties and their witnesses would be inconvenienced if this case is heard in the other's preferred forum. The relative docket congestion between the two courts is not so significant as to tip the scales in favor of one party or the other. See Murphy Declaration Exhibit 11, ECF No. 16-12, at 3. Both localities have an interest in this matter—each party is headquartered in its preferred forum, and both contribute to their respective local economies as employers. Oregon's interest based on the

availability of Serius's products for sale in the forum is not given significant weight for the purposes of determining whether to transfer venue. In re TS Tech USA Corp., 551 F.3d 1315, 1321 (Fed. Cir. 2008) (rejecting the argument that a forum had a "substantial interest" in having the case tried locally because several vehicles with the allegedly infringing headrest element were sold there).

As for the parties' contacts with the forum, Seirus admits that it has directly sold and sent allegedly infringing products into Columbia's home state, and this intentional targeting of the forum for commercial gain weighs in Columbia's favor.

Seirus vigorously argues that this matter should be transferred because its evidence is located in Southern California. Def. Reply at 14. Seirus cites In re Genentech, Inc., 566 F.3d 1338, 1345 (Fed. Cir. 2009), for the proposition that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer," and therefore the location of the defendant's documents "weighs in favor of transfer to that location." Id. The Federal Circuit has instructed that district courts should not minimize the weight of this factor in light of technological advances such as electronic document storage and transportation, or the availability of video conferencing for depositions or testimony. TS Tech, 551 F.3d at 1321 (quoting In re Volkswagen of Am., Inc., 545 F.3d 304, 316 (5th Cir. 2008)) (explaining "that access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous."). This factor weighs in Seirus's favor, though given the aforementioned conveniences of modern litigation, the Court does not give it the conclusive weight Seirus demands.

Finally, there is ordinarily a "strong presumption in favor of the plaintiff's choice of forum." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981); see also Decker Coal Co., 805

F.2d at 843 ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."). Given that the preceding factor analysis essentially stalemates, the Court defers to Columbia's choice to litigate this matter in its home forum, and Seirus's motion to transfer venue to the Southern District of California is denied.

ORDER

For the reasons stated, Defendant Seirus's motion to dismiss for lack of personal jurisdiction or, alternatively, transfer venue to the Southern District of California [15] is denied.

Dated this 29 day of June, 2015.

/s/ Marco Hernández
MARCO A. HERNÁNDEZ
United States District Judge