IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

COLUMBIA SPORTSWEAR NORTH
AMERICA, INC., an Oregon corporation,

       Plaintiff,

  v.

SEIRUS INNOVATIVE ACCESSORIES,
a Utah corporation,

       Defendant.

No. 3:15-cv-00064-HZ

OPINION & ORDER

Nicholas F. Aldrich, Jr.
David W. Axelrod
Scott D. Eads
Schwabe Williamson & Wyatt, PC
1211 SW Fifth Avenue, Ste. 1600
Portland, OR 97204

    Attorneys for Plaintiff

OPINION & ORDER - 1

Eric M. Jaegers
Troutman Sanders LLP
11682 El Camino Real, Ste. 400
San Diego, CA 92130

Matthew D. Murphey
Troutman Sanders LLP
5 Park Plaza , Ste. 1400
Irvine, CA 92614

Alison A. Grounds
Paul E. McGowan
Troutman Sanders LLP
600 Peachtree St. NE, Ste. 5200
Atlanta, GA 30308

Anup M. Shah
Troutman Sanders LLP
301 S. College St., Ste. 3400
Charlotte, NC 28202

Jasmine C. Hites
Troutman Sanders LLC
100 SW Main, Ste. 1000
Portland, OR 97204

Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff, Columbia Sportswear North America, Inc. ("Columbia") owns three patents, U.S. Patent Nos. 8,424,119 (the '119 Patent), 8,453,270 (the '270 Patent), and D657,093 (the D'093 patent), protecting its "Omni-Heat" technology, a heat reflective material that can reflect body heat but allow for breathability and moisture wicking. Compl. ¶ 2. The Omni-Heat material is used as a lining in a variety of outdoor gear such as jackets, shirts, gloves, and more. Defendant Seirus Innovative Accessories, Inc. ("Seirus") sells its own brand of cold weather gear, including gloves and glove liners with a breathable, heat reflective material it calls HeatWave. Aldrich Decl. Exs. O, T, U, ECF 76-3. Columbia alleges that Seirus's HeatWave

OPINION & ORDER - 2

product infringes its Omni-Heat patents, including design patent D'093. Columbia's patented design and Seirus's HeatWave design are depicted below:




          Columbia's D'093 design                       Seirus's HeatWave

The Court recently issued a claim construction Opinion & Order in which it declined to give a textual construction to Columbia's patented design, choosing to address the parties' legal arguments about the scope of Columbia's D'093 patent in this Opinion & Order. Currently before the Court is Columbia's motion for partial summary of infringement of the design patent D'093. The striking visual similarity between Seirus's design and Columbia's patented design is likely to confuse an ordinary observer, and therefore, Columbia's motion is granted.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)).

OPINION & ORDER - 3

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing Celotex, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112 (9th Cir. 2011).

## DISCUSSION

### I. Design Patent Infringement Standard

"A design patent protects the nonfunctional aspects of an ornamental design as shown in the patent." Arminak & Associates, Inc. v. Saint-Gobain Calmar, Inc., 501 F.3d 1314, 1319 (Fed. Cir. 2007) abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665 (Fed. Cir. 2008) (quotation omitted); see also 35 U.S.C. § 171 ("Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title."). "[A] design patent is infringed by the 'unauthorized manufacture, use, or sale of the article embodying the patented design or any colorable imitation thereof.' " Arminak, 501 F.3d at 1319 (quoting Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., 162 F.3d 1113, 1116–17 (Fed. Cir. 1998).

Infringement of a design patent is evaluated in a two-step process similar to that of a utility patent. "First, the court must construe the claims of the design patent to determine their meaning and scope." Id. (citing OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1404–05

(Fed. Cir. 1997). Design patents typically are claimed as shown in drawings, though district courts have the discretion to construe design patents with a detailed textual description. Goodyear, 162 F.3d at 1116. The court then compares the construed claims to the accused design. Id. at 1320. The accused product infringes the design patent if "the designs have the same general visual appearance, such that it is likely that the purchaser (or the ordinary observer) would be deceived into confusing" the two designs. Id.; see also Crocs, Inc. v. Int'l Trade Comm'n, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (design patent is infringed if "an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design."); Gorham Manufacturing Co. v. White, 81 U.S. (14 Wall.) 511, 528 (1871) ("[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.").

"[I]n conducting a design patent infringement analysis, the patented design is viewed in its entirety, as it is claimed. The ultimate question requires determining whether 'the effect of the whole design is substantially the same.' " Payless Shoesource, Inc. v. Reebok Int'l Ltd., 998 F.2d 985, 990–91 (Fed. Cir. 1993) (citing L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d at 1117, 1918 (Fed. Cir. 1993) (quotation and alterations omitted). "[M]inor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." Id. (citing Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423, 1444 (Fed. Cir. 1984); see also Crocs, 598 F.3d at 1303 (explaining that the focus of the infringement analysis is the "overall impression of the claimed ornamental features" rather than "small differences in isolation.").

## II. Infringement Analysis

As mentioned above, the Court recently issued an Opinion & Order in which it declined to give a textual construction to Columbia's D'093 patent. See Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 679 (Fed. Cir. 2008) (the "preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design."). Accordingly, the Court turns here to the second step of the infringement analysis: comparing Columbia's patented design and Seirus's accused HeatWave design and asking "whether an ordinary observer, familiar with the prior art . . . would be deceived into believing" the Seirus design is the same as Columbia's patented one. Id. at 681.

### a. Ordinary Observer

The first issue to address is the identity of the ordinary observer. Arminak, 501 F.3d at 1321 ("A question that is central to this case, and every design patent case, is the identity of the 'ordinary observer' of the design at issue . . . ."). "[T]he focus is on the actual product that is presented for purchase, and the ordinary purchaser of that product." Goodyear Tire, 162 F.3d at 1117 (Fed. Cir. 1998) (abrogated on other grounds by Egyptian Goddess, 543 F.3d at 678).

The ordinary observer in this case is a retail customer who buys and uses the articles of manufacture Seirus sells—gloves, socks, hats, and other gear—that incorporate the patented design. Gorham, 81 U.S. at 528 (describing "ordinary observers" as those "who buy and use" the products at issue); see also Braun Inc. v. Dynamics Corp. of Am., 975 F.2d 815, 820 (Fed. Cir. 1992) (proper ordinary observer in a design patent case involving hand held blenders was a person seeking to purchase such a blender)

Seirus argues that the ordinary observer here should be the "commercial purchaser rather than an individual consumer." Defendant's Response ("Def. Resp.") at 15–16, ECF 82. But the cases it cites in support are all readily distinguishable because they did not involve products that

OPINION & ORDER - 6

were intended for sale to retail consumers. For example in Arminak, the patented design at issue was a "trigger shroud," which in turn was part of a "trigger sprayer," a device that attaches to the top of a bottle with a tube extending down into the liquid to create a spray bottle. 501 F.3d at 1318. The ordinary observer of the trigger shroud was the industrial purchaser and not a retail customer because it was the purchaser who bought and used the trigger shroud by combining it with other parts to create a finished retail product (such as a bottle of glass cleaner). Id. at 1323–24. Similarly, in a case involving the design of a lingerie hanger specially designed to create more efficient retail displays, the court correctly found that the ordinary observer was "not the general public, but the sophisticated buyer for the garment manufacturer, who purchase[d] the hangers" and used them to create the displays. Spotless Enterprises, Inc. v. A & E Products Grp. L.P., 294 F. Supp. 2d 322, 347 (E.D.N.Y. 2003). Here, by contrast, it is the retail customer who buys and uses Seirus's products lined with the HeatWave fabric to keep their hands, feet, or head warm during outdoor activities. Thus, the ordinary observer in this case is the end buyer and user of Seirus's gloves and other products.

Finally, Seirus argues that its products are "specialty products" and thus the "appropriate ordinary observer is more discriminating about design differences." Def. Resp. at 16 (citing Arc'teryx Equip., Inc. v. Westcomb Outerwear, Inc., No. 2:07-CV-59 TS, 2008 WL 4838141, at *2 (D. Utah Nov. 4, 2008)). The plaintiff in Arc'teryx asserted that a competing design for a "curvilinear zipper" infringed its design patent. Id. at *1. "The parties agree[d] that the 'ordinary observer' . . . [was] an outdoor clothing customer who is more discerning that an average retail shopper." Id. at *2. The Court then found that the defendant's zipper design was noninfringing because the ordinary observer would clearly see that the accused zipper had three sections, not two like the patented design. Id. at *3. Further, the accused zipper was much longer and was

OPINION & ORDER - 7

placed in a different section of the coat than the patented design. Id. When compared to the prior art, the court found the accused zipper was closer to another patent than the plaintiff's asserted patent. Id. Thus, "based on the differences" between the two items, "no reasonable jury could find than an ordinary observer, familiar with the prior art, would be deceived into confusing" the two designs. Id.

But here, even the most discerning customer would be hard pressed to notice the differences between Seirus's HeatWave design and Columbia's patented design:

    

Columbia's D'093 design                               Seirus's HeatWave

The overall visual impression of these two designs is strikingly similar, as both use a nearly identical wave pattern with contrasting colors, and the waves have approximately the same wave length and amplitude. A customer shopping for outdoor gear with a heat-reflective element could easily be confused into thinking that the Seirus product was actually a Columbia product, or that the Seirus product was somehow affiliated with Columbia's patented design. As explored in more detail below, Seirus argues that its design is distinguishable because it incorporates the Seirus logo and its wave pattern is slightly irregular and vertically oriented. But those minor differences, to the extent they are relevant at all, do not change the conclusion that the effect of the whole Seirus design is substantially the same as Columbia's patented design. Payless Shoesource, Inc. v. Reebok Int'l Ltd., 998 F.2d 985, 990–91 (Fed. Cir. 1993) (citing L.A.

OPINION & ORDER - 8

Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d at 1117, 1918 (Fed. Cir. 1993) ("The ultimate question [of design patent infringement] requires determining whether the effect of the whole design is substantially the same. Moreover, . . . minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement.") (citations and quotation marks omitted).

### III. Substantially Dissimilarity

"In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer, as required by Gorham." Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 678 (Fed. Cir. 2008). Seirus asserts that "[t]his is one of those instances," Def. Resp. at 18, and points to the following "substantial and significant differences" between the two designs:

- "[T]he waves appearing in the accused design are ***decidedly interrupted***" by the repeated use of its logo. Def. Resp. at 9 (double emphasis in original).
- "[T]he wavy lines are at all times orthogonal[1] to the 'Seirus' surface ornamentation, giving them a vertical appearance in comparisons to the 'Seirus' design."
- "[T]he lines in the accused wave pattern are neither uniformly-spaced nor uniformly-sized."

Def. Resp. at 9–10. None of these purported "substantial and significant" distinguishing features stands up to scrutiny.

### a. Logo

Seirus's first claimed distinguishing feature is that its logo, or as Seirus artfully describes it, the Seirus "surface ornamentation," is an "innate and integral" part of the wavy-lined design

---

[1] "Orthogonal" means "at a right angle."

OPINION & ORDER - 9

of its "HeatWave" fabric. Def. Resp. at 9. It is, however, well-settled that a defendant cannot avoid infringement by merely affixing its logo to an otherwise infringing design. L.A. Gear, 988 F.2d at 1126 ("Design patent infringement . . . does not . . . allow of avoidance of infringement by labelling."); Cornucopia Products, LLC v. Dyson, Inc., No. CV 12-00234-PHX-NVW, 2012 WL 3094955, at *4 (D. Ariz. July 27, 2012) (explaining that, in applying the ordinary observer test, "labeling usually may not be considered. The company logo undoubtedly helps ordinary observers distinguish products, but design patent protection would essentially collapse if putting one's own logo on an otherwise identical product could defeat the ordinary observer test."); Torspo Hockey Int'l Inc. v. Kor Hockey Ltd., 491 F. Supp. 2d 871, 881 (D. Minn. 2007) ("[T]he presence of a logo cannot defeat a design-infringement claim[.]"); Rockport Co., Inc. v. Deer Stags, Inc., 65 F. Supp. 2d 189, 195 (S.D.N.Y. 1999) (defendant's mark was "irrelevant" to question of design patent infringement). Therefore the Court does not consider Seirus's "surface ornamentation," i.e. the Seirus logo, in the infringement analysis.

Seirus asserts that "courts can consider logos . . . when applying the ordinary observer test." Def. Resp. at 21 (citing Apple Inc. v. Samsung Elecs. Co., No. 11-CV-01846-LHK, 2011 WL 7036077, at *16 (N.D. Cal. Dec. 2, 2011)). But that argument ignores a key distinguishing fact in the Apple analysis, as Judge Koh stated:

> Typically, the use of a mark will not avoid infringement of an otherwise infringing product. *See L.A. Gear,* 988 F.2d at 1126 ("Design patent infringement ... does not ... allow avoidance of infringement by labeling"). Nonetheless, a logo's placement can be considered **when logo placement and appearance are part of the style claimed** in the patented designs.

Id. (emphasis added). Here, Columbia's patents do not claim logo placement as part of the claimed design. Thus, that passage from Apple simply does not come into play.

Finally, Seirus's reliance on the Warsaw case to support its argument regarding the "significance of surface ornamentation" is similarly inapt. Def. Resp. at 19 (citing Warsaw Orthopedic, Inc. v. NuVasive, Inc., No. 12-cv-2738-CAB (MDD), slip op. at 11 (S.D. Cal. Oct. 20, 2015). In that case, the added "ornamentations" were not a logo, but numerical markings on a medical device that served a functional purpose (specifically, measuring the diameter of a dilation). See id. Seirus's logo here on its "HeatWave" fabric, by contrast, does not serve any purpose other than to identify the source of the products, according to deposition testimony from Seirus's President:

> Q: And you wanted customers to identify this fabric with Seirus's brand; is that right?
>
> A: Of course.
>
> Q: And so that's why you put the logo in this fabric as you were – the fabric design as you were developing it; is that right?
>
> A: That's correct.

Aldrich Decl. Ex. A, ECF 93, at 155:12–18. Moreover, Columbia provided a number of examples of Seirus marketing materials where the Seirus logo does not appear on the fabric. See Pl. Reply at 7–10. Seirus's President explained that "it is not necessary to put [the logo] in back drop iterations of the wave if it's very clear in the document that this product is sourced by Seirus." Id. at 205:10–14. It is evident, then, that Seirus's logo is a source identifier and not some functional marking that might bring the present case more in line with Warsaw.

### b. Vertical Orientation

Another "distinguishing feature" Seirus claims is that its "wavy lines are at all times orthogonal to the 'Seirus' surface ornamentation, giving them a vertical appearance . . . ." Def. Resp. at 9. But the scope of the '093 patent is not limited to a particular orientation; the figures used in the patent show that the fabric is used in multiple orientations, including on the

OPINION & ORDER - 11

horizontal and diagonal. See D'093 patent, figs. 7–9. Secondly, Columbia also produced pictures of Seirus products where the wavy lines fabric is horizontally oriented, and Seirus's President admitted in his deposition that the orientation of the lines in the HeatWave pattern depends on how the product is held:

> Q:   If the lines—if the wavy lines move in the direction of the wrist to the fingertip, is that horizontal?
> . . .
> A:   If you hold the product so that they are horizontal it would be.

Aldrich Decl. Ex. A at 180:11–16; see also Pl. Reply at 16–17.

Finally, Judge Koh rejected a similar argument in another Apple v. Samsung decision. Samsung argued that the Apple's D'889 patent for the iPad was invalid in part because "drawings showing the design oriented in different directions make it impossible to know which way the design is supposed to be oriented . . . ." Apple, Inc. v. Samsung Elecs. Co., 932 F. Supp. 2d 1076, 1085 (N.D. Cal. 2013). "[C]ontrary to Samsung's assertion," Judge Koh wrote, "there is simply no requirement that a claimed design must have a particular preferred orientation; indeed, Samsung cites no law even suggesting that there is." Id. at 1086. "The fact that the D'889 Patent shows a design in different orientations merely shows that the particular orientation—landscape or portrait, head-on or perspective—is not part of what is claimed." Id. at 1086.

Similarly here, there is nothing in the D'093 patent requiring the design to be oriented any particular way. As a practical matter, this makes sense because the fabric is intended to line body gear; the direction of the wavy lines changes as the fabric is fitted into jacket sleeves or fingers of gloves. Therefore, the Court does not consider the particular orientation of the wavy lines as a distinguishing feature.

//

//

### c. Difference in Line Width

Finally, Seirus asserts that its wavy-line design for the HeatWave fabric is distinguishable from Columbia's patented design because the lines in the accused design "are neither uniformly-spaced nor uniformly sized." Def. Resp. at 9–10. But again, those limitations are not claimed in the patent, and thus are not relevant to the analysis. Unique Functional Products, Inc. v. Mastercraft Boat Co., 82 F. App'x 683, 690 (Fed. Cir. 2003) ("[T]he '777 patent is not limited to any particular size or color. We conclude, therefore, that the court erred by taking those features into consideration in its infringement analysis[.]"); Hutzler Mfg. Co. v. Bradshaw Int'l, Inc., No. 11 CIV. 7211 PGG, 2012 WL 3031150, at *12 (S.D.N.Y. July 25, 2012) ("Where—as here—the design patent is not limited to a particular size, color, or construction material, such factors should not be taken into consideration in performing an infringement analysis."). Moreover, even considering the slight variation in wave width or spacing, the differences between the Seirus design and the Columbia design are so minor as to be nearly imperceptible, and do not change the overall visual impression that the Seirus design is the same as Columbia's patented one. Crocs, 598 F.3d at 1303 ("Minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement.").

## IV.   Prior Art Comparisons

"[T]he ordinary observer is deemed to view the differences between the patented design and the accused product in the context of the prior art." Egyptian Goddess, 543 F.3d at 676. "When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." Id. "And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely

to be important to the eye of the hypothetical ordinary observer." Id; see also Arc'teryx, 2008 WL 4838141 at *3 (comparing and contrasting claimed design and accused design to prior art).

"[I]f the accused infringer elects to rely on the comparison prior art as part of its defense against the claim of infringement, the burden of production of that prior art is on the accused infringer." Egyptian Goddess, 543 F.3d at 678. "The accused infringer is the party with the motivation to point out close prior art, and in particular to call to the court's attention the prior art that an ordinary observer is most likely to regard as highlighting the differences between the claimed and accused design." Id.

Seirus presents a small collection of prior art that reflects "wavy line" designs. Def. Resp. at 25–29. But Seirus's prior art consists almost entirely of utility patents which disclose functional, not aesthetic features, such as skid-resistant footwear, or latex glove grips. Columbia's D'093 patent protects the "**ornamental design** of a heat reflective material, as shown and described," meaning the utility patents are of little, if any relevance. See 35 U.S.C. § 171 (protecting "any new, original and ornamental design for an article of manufacture . . . .").

Moreover, the vast majority of Seirus's prior art covers products far afield from Columbia's "heat management materials," which, again, significantly limits the relevance of the prior art in this case. Courts examining design patents in relation to prior art cabin their analysis to prior art specific to the class of articles identified in the design patent at issue. See, e.g., Egyptian Goddess, 543 F.3d at 680 (comparing claimed and accused nail buffer designs with "[t]he two closest prior art nail buffers"); Arminak, 501 F.3d at 1324–25 (comparing claimed and accused designs for spray bottle trigger shrouds against prior spray bottle trigger shroud designs); Cornucopia Products, 2012 WL 3094955 at *4 (explaining that "the ordinary observer is assumed to be familiar with the prior art—*i.e.,* all relevant preexisting designs for similar

products," and then comparing claimed and accused fan design against prior fan designs); Arc'teryx, 2008 WL 4838141 at *3 (comparing claimed and accused designs for jacket zippers against prior designs for jacket zippers). Accordingly, Seirus's prior art that discloses shoe treads (Ostberg '131 and Di '716), textured grips for gloves (Smalls '121), a utility for creating stronger fabrics (Respess '792), and other industrial utility patents (Boorn '690, Pratte '191) is not relevant to a comparison between Columbia's and Seirus's designs for heat reflective material.

The only prior art that even approaches relevance to Columbia's design patent are a pair of utility patents issued regarding a "waterproof breathable lining and outwear constructed therefrom," U.S. Patent No. 5,514,459, and a "breathable shell for outerwear." U.S. Patent No. 5,626,949. One of the figures in the patent, depicted below, does resemble the wavy design of Columbia's patent:



'949 patent, Murphey Decl. Ex. E. That figure depicts one of several example arrangements of a "relatively high-tensile-strength, highly flexible elastomer, such as an acrylic urethane," which is applied directly to the inner face of a weather-impermeable fabric to provide "[d]imensional stability" and "vapor transmission." '949 patent, col. 2, ll. 17–20; col. 3, ll. 42–45. But again, neither of these patents is a design patent, and neither one makes a claim to this particular pattern or, for that matter, any aesthetic features.

Even if the Court were to consider these patents as relevant prior art, the contrasting waves of Seirus's design are still substantially closer to the contrasting wave design disclosed in

the D'093 patent than either Seirus's or Columbia's design is to the pattern disclosed in figure 5 of the '949 patent, as can clearly be seen by comparing the three designs here:



    Columbia's D'093 patent        Seirus's HeatWave        '949 patent

The waves in the '949 are not contrasting colors, and the waves in the Columbia and Seirus designs are very close to the same wavelength and amplitude. The overall visual effect of the Columbia and Seirus designs are nearly identical, and if the logo was removed from the Seirus design, an ordinary observer would have great difficulty distinguishing between the Seirus and Columbia designs. L.A. Gear, 988 F.2d at 1126 ("Design patent infringement . . . does not . . . allow of avoidance of infringement by labelling."). Thus, Seirus's HeatWave design infringes Columbia's D'093 patent.

//
//
//
//
//
//
//
//
//

OPINION & ORDER - 16

CONCLUSION

An ordinary observer familiar with the prior art would be likely to confuse Seirus's design with Columbia's patented design. Therefore, Columbia's motion [75] for partial summary judgment of infringement of U.S. Design Patent No. D657,093 is granted.

IT IS SO ORDERED

Dated this \_\_\_10\_\_\_ day of \_\_\_August\_\_\_, 2016.

_____
MARCO A. HERNÁNDEZ
United States District Judge