1 Christopher S. Marchese (SBN 170239), marchese@fr.com
2 Seth M. Sproul (SBN 217711), sproul@fr.com
Michael A. Amon (SBN 226221), amon@fr.com
3 Garrett K. Sakimae (SBN 288453), sakimae@fr.com
4 Tucker N. Terhufen (SBN 311038), terhufen@fr.com
FISH & RICHARDSON P.C.
5 12390 El Camino Real
6 San Diego, CA 92130
Tel: (858) 678-5070, Fax: (858) 678-5099
7

8 Renée Rothauge, (SBN 271239), reneerothauge@markowitzherbold.com
MARKOWITZ HERBOLD PC
9 1211 SW Fifth Avenue, Suite 3000
10 Portland, OR 97204
Tel: (503) 295-3085, Fax: (503) 323-9105
11

12 Attorneys for Defendants, Seirus Innovative Accessories, Inc.

13 IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
14

| | |
|---|---|
| 15 COLUMBIA SPORTSWEAR NORTH AMERICA, INC., an Oregon corporation, 16 17 Plaintiff, 18 19 v. 20 SEIRUS INNOVATIVE ACCESSORIES, INC., a Utah corporation 21 22 Defendants. | Case No. 3:17-cv-01781 **SEIRUS' OPPOSITION TO COLUMBIA'S MOTION TO EXCLUDE DEFENDANT'S EXPERTS BLOCK AND DISTLER** [Dkt. No. 300] Judge:     Marco A. Hernandez Courtroom:  3C Date:     September 18, 2017 Time:     9:00 AM Date Action Filed:  January 12, 2015 Trial Date:  September 18, 2017 |

23
24
25
26
27
28

SEIRUS' OPPOSITION TO COLUMBIA'S MOTION TO EXCLUDE BLOCK
AND DISTLER
Case No. Case No. 3:17-cv-01781

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **INTRODUCTION**

Seirus offers the following response to yet another in a parade of motions brought by Columbia to prevent this case from being tried on the merits.   In Columbia's Motion to Exclude Defendant's Experts Block and Distler [Dkt. No. 300], Columbia complains that it did not have adequate time or opportunity to respond to short supplemental reports served by Seirus to address design patent damages—the standard for which this Court just decided less than two weeks ago.  Columbia had ample time to take steps to understand and analyze these reports—such as asking for supplemental depositions.  Notably, Columbia took a supplemental deposition of Seirus' financial witness on the very data it now complains of and Seirus has made itself available, in the middle of trial, to take a deposition on less than a week's notice for Columbia's previously-undisclosed witness relating to the article of manufacture. Yet instead of requesting additional discovery, Columbia chose to file the present 17-page motion (nearly double the length of one of the expert reports).  Columbia's request to strike this expert testimony and the underlying facts should be rejected.

So too should this Court reject Columbia's request to strike the expert opinion of Ms. Distler under Fed. R. Evid. 702.  Ms. Distler followed the instructions of the Supreme Court and first made a determination as to the appropriate article of manufacture and second calculated Seirus' profits from sale of that article of manufacture.  In doing so, Ms. Distler relied on sufficient facts and data as well as a reliable methodology.  Columbia's only criticisms nit-pick at a single sentence in her report and conflates the two separate steps in her analysis.

Columbia will be able to cross-examine Dr. Block and Ms. Distler on their reports just like Seirus will do with the new report for Dr. Cole.  Given the uncertainty in the approach to the article of manufacture test, this Court should allow the supplemental reports.  Accordingly, this Court should deny Columbia's motion.

SEIRUS' OPPOSITION TO COLUMBIA'S MOTION TO EXCLUDE BLOCK AND DISTLER
Case No. Case No. 3:17-cv-01781

## ARGUMENT

## I.   SEIRUS' SUPPLEMENTAL EXPERT TESTIMONY SHOULD NOT BE STRICKEN

Columbia argues that Seirus' supplemental expert reports and underlying data should be stricken as untimely.  Columbia is wrong.  The Federal Rules put a party under a continuing obligation to "supplement" its expert reports to reflect any new information discovered after the report's initial disclosure at any point in the litigation. Fed. R. Civ. P. 26(a)(2)(E) & 26(e)(2); *see also*, *e.g.*, *McKinney v. Connecticut*, 2011 WL 166199, at *2 (D. Conn. Jan. 19, 2011) (noting that the "fact that discovery has closed has no bearing on [the d]efendant's duty to supplement under Rule 26(e)"). Consistent with these rules, Seirus filed two supplemental expert reports concerning the appropriate article of manufacture related to Columbia's design patent and concerning Seirus' profits based on that article of manufacture based on updates to the law in this area.  Those reports address information already disclosed in this case. In addition, to address the profits under the correct article of manufacture, Seirus' damages expert—Ms. Distler—relied on supplemental financial information detailing a breakdown of individual costs associated with making the accused products, which Seirus promptly provided to Columbia.  Notably, at the time Seirus began working on these supplemental expert reports, the standard this Court would adopt for design patent damages and, in fact, whether design patent damages would still be part of the case to be tried to the jury was unresolved.

Here, Seirus had substantial justification for submitting supplemental expert testimony when it did and had substantial justification for providing supplemental financial information related to those reports.  As this Court acknowledged, this case was thrown a curve when the Supreme Court changed the standard for determining design patent damages. *See* Ex. A, at 85–86.  At the time Seirus began working on its supplementation, and even up to and including the time when Seirus filed the supplemental expert report of Dr. Block, the standard this Court would use for

1    determining the appropriate "article of manufacture" was unknown.   Indeed,

2    Columbia itself pointed to the uncertainty in the law when justifying adding a never-

3    previously-disclosed fact witness to address the article of manufacture, and this Court

4    agreed with that rationale.  *See* Ex. A at 57:14–58:10.  For the same reason, this Court

5    should allow Seirus' previously disclosed expert witnesses to testify about the same

6    topic and allow their reliance on relevant financial information.  In addition, the time

7    for Seirus' supplementation was justified because Seirus was in the process of

8    switching counsel when the deadline for supplemental expert reports passed.  *See*

9    *Renfrow v. Redwood Fire & Cas. Ins. Co.*, 288 F.R.D. 514, 522 (D. Nev. 2013)

10   (refusing to grant sanctions under Rule 37(c), in part, because "[t]he record

11   demonstrates that there was a change in defense counsel");  *Gurvey v. Legend Films,*

12   *Inc.*, No. 09-CV-942-AJB BGS, 2011 WL 3241832, at *2 (S.D. Cal. July 29, 2011)

13   (refusing to grant Rule 37(c) sanctions because of a change in expert and in counsel).

14        The timing of Seirus' supplementation was also harmless. Seirus served Dr.

15   Block's supplemental report more than a week-and-a-half before trial when Columbia

16   had ample time to ask for an additional deposition based on that supplemental report.

17   (Notably, Seirus will take a deposition of Columbia's never-previously-disclosed

18   witness despite only having less than a week's notice).  Yet Columbia did not ask

19   Seirus for additional deposition time, nor did Columbia ask the Court to order one at

20   the pre-trial conference.  Seirus served Ms. Distler's report just a few days later.

21   Again, Columbia did not ask for a supplemental deposition.  And lastly, in response

22   to the supplemental financial information, Columbia asked, and Seirus obliged in

23   providing, a supplemental deposition of Seirus's financial witness, during which

24   Columbia deposed that witness about the supplemental financial data.  In short,

25   Columbia has not sought any additional discovery, even though the parties have

26   agreed to two related depositions at the same time.

27

28

SEIRUS' OPPOSITION TO COLUMBIA'S MOTION TO EXCLUDE BLOCK
AND DISTLER
Case No. Case No. 3:17-cv-01781

1    In any event, a deposition is unnecessary because Dr. Block and Ms. Distler

2    will appear at trial and Columbia will have the opportunity to cross examine and fully

3    explore their opinions.

4    It is worth noting that the subject matter is simple and generally relates to the

5    issue of what the article of manufacture is for purposes of damages.  Dr. Block opines

6    the fabric is the article of manufacture, not the Seirus gloves.  He bases this on known

7    features and functions of the gloves.  This subject matter can be covered easily in cross

8    examination.

9    ## II.   MS. DISTLER'S OPINIONS READILY MEET THE *DAUBERT*

10   STANDARD

11   In its motion, Columbia contends that Ms. Distler's opinions concerning design

12   patent damages should be excluded because they do not meet the standard laid out by

13   the Supreme Court in *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579 (1993)*, and

14   Fed. R. Evid. 702.  Under this standard, a party need not prove that the expert's

15   testimony is correct, but rather must simply demonstrate that the testimony is both

16   reliable and relevant.  *Daubert*, 509 U.S. at 594, 597; *see also i4i Ltd. v. Microsoft

17   Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010) (stating that "*Daubert* and Rule 702 are

18   safeguards against unreliable or irrelevant opinions, not guarantees of correctness").

19   For an expert's opinion to be relevant, it must be sufficiently based in the facts of the

20   case and must be more than unsupported speculation.  *See* Fed. R. Evid. 702(b).

21   However, "[t]he inquiry envisioned by Rule 702 is...a flexible one" and consideration

22   of an expert's testimony is necessarily a case and fact-dependent inquiry and no single

23   factor need be dispositive.  *Daubert*, 509 U.S. at 597; *Commonwealth Sci. & Indus.

24   Research Organization v. Cisco Sys., Inc.*, 809 F.3d 1295, 1302 (Fed. Cir. 2015), *cert.

25   denied*, 136 S. Ct. 2530, 195 L. Ed. 2d 859 (2016); *Ericsson, Inc. v. D-Link Sys., Inc.*,

26   773 F.3d 1201, 1232 n.8 (Fed. Cir. 2014).

27   Here, Ms. Distler's supplemental expert opinions readily meet this standard.  In

28   her expert report, Ms. Distler carefully calculates the amount of profits due to sale of

1    the appropriate "article of manufacture."  To do so, Ms. Distler follows the two basic

2    steps outlined by the Supreme Court in *Samsung v. Apple*—"First, identify the 'article

3    of manufacture' to which the infringed design has been applied. Second, calculate the

4    infringer's total profit made on that article of manufacture." 137 S. Ct. 429, 434

5    (2016).  In each step, Ms. Distler used reliable methodology and materials.

6         First, Ms. Distler identified the appropriate article of manufacture.  To do so,

7    Ms. Distler consulted with Mr. Murphy who explained to her "how Seirus's gloves

8    are made." (Ex. C to Mot. ("Distler Report"), at 5.) As Mr. Murphy explained, Seirus'

9    gloves are made up of a number of different components, such as an "outershell,

10   waterproof breathable inserts, HeatWave fabric, insulation, additional or different

11   palm or finger material, cinches, clips, zipper, pocket and/or vent material." (*See id.*

12   at 5–6.)  Ms. Distler also consulted with Mr. Murphy about the "benefits and

13   functions" of each of these components.  Ms. Distler also reviewed the Supplemental

14   Expert report of Block, which explained that "[e]ach of the components has a separate

15   function and is distinct from the others."  (*Id.* at 6.)  Moreover, Block's report

16   explained that, in addition to the physical components, the gloves were the result of

17   "valuable know-how relating to design, including cutting, stitching, and finishing of

18   the fabric [which] is necessary to create a high-quality, usable glove." (*Id.*)  Based on

19   this information, Ms. Distler concluded that the accused products are multi-

20   component products and that the appropriate "article of manufacture" was the heat-

21   wave fabric.  (*Id.*) Ms. Distler's opinion in this respect is reliable because it is based

22   on the relevant law and sufficient facts.  *See* Fed. R. Evid. 702 (expert testimony based

23   on "sufficient facts or data" and "reliable principles and methods" is admissible);

24   *Samsung*, 137 S. Ct. at 435 (2016) (explaining "[t]hat a component may be integrated

25   into a larger product, in other words, does not put it outside the category of the article

26   of manufacture"); *see also* Block Report at 5–6 (laying out the test adopted by the

27   Court, under which the appropriate article of manufacture is determined by, among

28

1  other things, looking at the "physical relationship between the patented design and the

2  rest of the product").

3         Second, Ms. Distler calculated the total profit Seirus made based on the

4  appropriate article of manufacture.   To accomplish this, Ms. Distler reviewed the

5  various costs associated with the production of the accused products and calculated

6  "the percentage of total costs attributable to the HeatWave Product." (*See* Distler

7  Report, at 7–8.)  She then applied this percentage to the "total revenue and gross

8  profits of the Accused Products to arrive at the revenue and gross profit for the

9  HeatWave Fabric." (*Id.* at 8.)  As explained in her report, this methodology was

10  appropriate based on her discussions with the CFO of Seirus, who confirmed her gross

11  profit calculations, and because there was no evidence "that the HeatWave Fabric

12  should be credited with generating a higher portion of profits than other components

13  included in the manufacture of an Accused Product." (*Id.* at 8–9.)  In fact, the evidence

14  indicates that there are significant non-patented items—such as "Goretex®,

15  waterproof, breathable, SoundTouch, PolarTec®, Weathershield®, rechargeable

16  batteries, brand, [and] the MegaHeat fabric warmth properties"—that contributed

17  significantly to the sales of the accused products.  Lastly, Ms. Distler then identified

18  and took account of "additional costs"—such as business promotion and advertising—

19  which she then deducted to arrive at the profit that Seirus earned from the sale of the

20  HeatWave fabric.  *(See id.* at 9–10; *see also id.* Schedule 3.1.)  Columbia does not

21  complain of any reliability problems with Ms. Distler's calculations, nor could they—

22  Ms. Distler used straightforward and accepted accounting principles to isolate the

23  profits due to the sale of the appropriate article of manufacture.

24         Columbia, apparently, identifies only one *Daubert* issue for Ms. Distler's

25  report.  Specifically, Columbia focuses on a single sentence from Ms. Distler's report

26  and argues that the whole report should be thrown out because, allegedly, Ms. Distler

27  inappropriately considered non-physical components in addition to physical

28  components when determining the appropriate article of manufacture. *See* Mot. at 14-

6

SEIRUS' OPPOSITION TO COLUMBIA'S MOTION TO EXCLUDE BLOCK
AND DISTLER
Case No. Case No. 3:17-cv-01781

16.  According to Columbia, the Supreme Court held that an "article of manufacture" under § 289 must be a physical component, not intangible components such as labor, know how, or service skills.  *See* Mot. at 15.

As has become a consistent practice in its briefing before this Court, Columbia significantly over reads the cases it cites.  Nothing in the Supreme Court's *Samsung v. Apple* decision limits the "article of manufacture" analysis to only physical components.  In fact, one of the design patents in that case claimed "the ornamental design for a graphical user interface for a display screen or portion thereof"—Apple's iconic home screen.  *See Apple Inc. v. Samsung Elecs. Co.*, 786 F.3d 983, 997 (Fed. Cir. 2015), *cert. granted in part*, 136 S. Ct. 1453, 194 L. Ed. 2d 549 (2016), *and rev'd and remanded*, 137 S. Ct. 429, 196 L. Ed. 2d 363 (2016).  Indeed, design patents on non-physical ornamental designs are commonplace.  *See generally* Michael Risch, *Functionality and Graphical User Interface Design Patents*, 17 STAN. TECH. L. REV. 53, 54 (2013) (exploring the recent trend of computer manufacturers seeking design patent protection over graphical user interfaces).  If Columbia is to be believed, determining the "article of manufacture" related to this software-created designs would be near-impossible, as there is no physical component associated with the designs.  Given the breadth of the types of designs covered by design patents, limiting the analysis to only physical components does not make any sense.

The truth is, despite Columbia's assurances otherwise, the law as to how to calculate design patent damages is still evolving.  As this Court recognized, when it comes to design patent damages everybody "is in the same place; and that is an appellate court is going to tell us whether we're right or not, because there is nothing else to rely on. . . . We'll be the first ones out there."  Ex. A, at 85–86.  Ms. Distler's opinions concerning the article of manufacture are certainly reasonable given this uncertainty, and should not be excluded.

Lastly, even if Columbia's assertion is correct, removing this single sentence from Ms. Distler's report does not change the ultimate conclusion.  Ms. Distler made

1   this statement in her step one analysis—she concluded that the appropriate article of

2   manufacture was the HeatWave fabric because the accused products were made up of

3   many separate and distinct components, both physical and non-physical.   Even

4   without considering the non-physical components, as her and Dr. Block's reports

5   clearly point out, there are numerous physical components in the gloves, of which the

6   HeatWave fabric is just one.   Thus, even without considering the "know how" and

7   other non-physical components, the conclusion that the HeatWave fabric is the

8   appropriate article of manufacture is reasonable and reliable.

9        Columbia conflates Ms. Distler's consideration of non-physical components at

10  step one with her calculating the profits in step 2.   As explained above, Ms. Distler

11  calculated the cost of the HeatWave fabric relative to other costs associated with

12  making the accused products in order to determine the profit associated with the article

13  of manufacture.   Considering all of the costs associated with making the product,

14  regardless of whether those additional costs count as "components," in calculating

15  profits is not only reasonable—it is the very definition of "profit."   *See* Brian A.

16  Garner, Ed., "Profit," BLACK'S LAW DICTIONARY, 4th Pocket Ed. (West, 1996)

17  (defining "profit" as "the excess of revenues over expenditures in a business

18  transaction").   In any event, should Columbia have any nit-picks with Ms. Distler's

19  calculation of profits, those should be addressed by the jury because, at base, "the

20  question of whether the expert is credible or the opinion is correct is generally a

21  question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co.*, Ltd.,

22  802 F.3d 1283, 1296 (Fed. Cir. 2015).

23  **III.   CONCLUSION**

24       For the reasons above, Columbia's motion should be denied.

25

26

27

28

8

1  Dated:  September 20, 2017

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FISH & RICHARDSON P.C.


By:  */s/ Christopher S. Marchese*
       Christopher S. Marchese
       marchese@fr.com

Attorneys for Defendant, Seirus Innovative
Accessories, Inc.

SEIRUS' OPPOSITION TO COLUMBIA'S MOTION TO EXCLUDE BLOCK
AND DISTLER
Case No. Case No. 3:17-cv-01781

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on September 20, 2017, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ Christopher S. Marchese*
Christopher S. Marchese
marchese@fr.com