Christopher S. Marchese (SBN 170239), marchese@fr.com
Seth M. Sproul (SBN 217711), sproul@fr.com
Michael A. Amon (SBN 226221), amon@fr.com
Garrett K. Sakimae (SBN 288453), sakimae@fr.com
Tucker N. Terhufen (SBN 311038), terhufen@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070, Fax:  (858) 678-5099

Renée Rothauge, (SBN 271239), reneerothauge@markowitzherbold.com
MARKOWITZ HERBOLD PC
1211 SW Fifth Avenue, Suite 3000
Portland, OR 97204
Tel:  (503) 295-3085, Fax:  (503) 323-9105

Attorneys for Defendant, Seirus Innovative Accessories, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA SPORTSWEAR NORTH AMERICA, INC., an Oregon corporation,<br><br>Plaintiff,<br><br>v.<br><br>SEIRUS INNOVATIVE ACCESSORIES, INC., a Utah corporation<br><br>Defendants. | Case No. 3:17-cv-01781<br><br>**SEIRUS' RESPONSE IN OPPOSITION TO COLUMBIA SPORTSWEAR NORTH AMERICA, INC.'S MOTION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF**<br><br>Judge:         Marco A. Hernandez<br>Hearing Date:  December 14, 2017<br>Hearing Time:  2:00 PM<br><br>Date Action Filed:  January 12, 2015<br>Trial Date:  September 18, 2017 |

1

## **<u>TABLE OF CONTENTS</u>**

2

**<u>Page</u>**

3  INTRODUCTION ................................................................................................ 1

4  I.  BACKGROUND OF THE CONSENT JUDGMENT ................................. 3

5
6  II.  BACKGROUND INFORMATION ABOUT *EX PARTE* REEXAMINATIONS ................................................................................ 4

7  ARGUMENT ..................................................................................................... 7

8
9  I.  COLUMBIA IS WRONG ON THE MERITS: THE CONSENT JUDGMENT DOES NOT PRECLUDE SEIRUS FROM REQUESTING ADDITIONAL EXAMINATION BY THE PTO ................................................................. 7
10

11  A.  The Consent Judgment is Not a Contract That Forever Resolves the Validity of the D'093 Patent Between the Parties ................................. 7
12

13  B.  Absent an Explicit and Clear Agreement to the Contrary, a Final Judgment of No Invalidity Does Not Prevent a Party from Seeking Reexamination ................................................................ 13
14

15  II.  EACH OF THE OTHER INJUNCTION FACTORS WEIGHS IN FAVOR OF SEIRUS ...................................................................... 17
16

17  CONCLUSION .......................................................................... 21

18

19

20

21

22

23

24

25

26

27

28

i

SEIRUS' RESPONSE IN OPPOSITION TO COLUMBIA'S MOTION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF
Case No. Case No. 3:17-cv-01781

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Advanced Micro Devices, Inc. v. S3 Graphics Co., Ltd.*,
   No. 11-965-LPS, 2011 WL 5402667 (D. Del. Nov. 8, 2011) .............................. 18

*Amoco Prod. Co. v. Vill. of Gambell*,
   480 U.S. 531 (1987)................................................................. 6, 19

*In re Baker Hughes Inc.*,
   215 F.3d 1297 (Fed. Cir. 2000) ............................................... 20

*Baseload Energy, Inc. v. Roberts*,
   619 F.3d 1357 (Fed. Cir. 2010) ................................................. 8

*In re Baxter*,
   678 F.3d 1357 (Fed. Cir. 2012) ............................................. 2, 16

*Cardinal Chem. Co. v. Morton Int'l, Inc.*,
   508 U.S. 83 (1993)................................................................. 20

*Caribbean Marine Servs. Co., Inc. v. Baldrige*,
   844 F.2d 668 (9th Cir. 1988) ................................................... 17

*In re Constr. Equip. Co.*,
   665 F.3d 1254 (Fed. Cir. 2011) ............................................... 16

*Cuozzo Speed Techs., LLC v. Lee*,
   136 S. Ct. 2131 (2016)............................................................. 5

*Donovan v. City of Dallas*,
   377 U.S. 408 (1964)................................................................. 6

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006)............................................................ 6, 7

*Ecolab, Inc. v. Paraclipse, Inc.*,
   285 F.3d 1362 (Fed. Cir. 2002) ..................................... 1, 8, 10, 12

*In re Etter*,
   756 F.2d 852 (Fed. Cir. 1985) ............................................. 5, 15

*Flex-Foot, Inc. v. CRP, Inc.*,
    238 F.3d 1362 (Fed. Cir. 2001) ........................................................ 8, 11

*Foster v. Hallco Mfg. Co., Inc.*,
    947 F.2d 469 (Fed. Cir. 1991) ..................................................... 8, 10, 12

*Giftango, LLC v. Rosenberg*,
    925 F. Supp. 2d 1128 (D. Or. 2013) (Hernandez, J.) ........................... 7

*Houston Atlas, Inc. v. Del Mar Sci., Inc.*,
    1982 U.S. Dist. LEXIS 10046 (N.D. Tex. 1982) .............................. 12

*IGT v. Aristocrat Techs, Inc.*,
    646 Fed. Appx. 1015, 1017–18 (Fed. Cir. 2016) ............................. 18

*Joy Mfg. Co. v. Nat'l Mine Serv. Inc.*,
    810 F.2d 1127 (Fed. Cir. 1987) ...................................................... 11

*Keystone Driller Co. v. Gen. Excavator Co.*,
    290 U.S. 240 (1933) ....................................................................... 19

*Lear, Inc. v. Adkins*,
    395 U.S. 653 (1969) ................................................... 3, 8, 20, 21

*Leibowitz v. Smith Barney Inc.*,
    863 F. Supp. 171 (S.D.N.Y. 1994) ................................................. 18

*Li v. A Perfect Franchise, Inc.*,
    No. 5:10-CV-01189-LHK, 2011 WL 2293221 (N.D. Cal. June 8, 2011) ........... 19

*Lopez v. Brewer*,
    680 F.3d 1068 (9th Cir. 2012) ......................................................... 7

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
    634 F.2d 1197 (9th Cir. 1980) ....................................................... 19

*Microsoft Corp. v. I4I Ltd. Partn.*,
    564 U.S. 91 (2011) ........................................................................... 4

*Nat'l Union Elec. Corp. v. Emerson Elecs., S.p.A.*,
    1975 WL 21094 (S.D.N.Y. Sept. 10, 1975) ................................... 18

*Nestier Corp. v. Menasha Corp.-Lewisystems Div.*,
    739 F.2d 1576 (Fed. Cir. 1984) ..................................................... 20

*Salazar v. Buono*,
  559 U.S. 700 (2010) .................................................................. 6

*In re Swanson*,
  540 F.3d 1368 (Fed. Cir. 2008) ............................... 2, 3, 9, 16

*In re Texas Holdings Corp.*,
  498 F.3d 1290 (Fed. Cir. 2007) .......................................... 14

*Warner-Jenkinson Co. v. Allied Chem. Corp.*,
  567 F.2d 184 (2d Cir. 1977) ................................................ 8

*Winter v. Nat. Resources Def. Council, Inc.*,
  555 U.S. 7 (2008) ......................................................... 6, 7, 17

**Statutes**

35 U.S.C. § 282 ............................................................... 4, 15

35 U.S.C. § 302 ...................................................... 1, 5, 10, 13

35 U.S.C. § 304 ...................................................................... 5

35 U.S.C. § 311 ...................................................................... 4

35 U.S.C. § 315 ............................................................... 5, 13

35 U.S.C. § 316 ...................................................................... 5

35 U.S.C. § 318 ...................................................................... 4

America Invents Act ......................................................... 4, 13

**Other Authorities**

Manual of Patent Examining Procedure ....................... 13, 14, 15

1

## **INTRODUCTION**

Columbia's motion is wrong on the merits.  Nothing in the judgment entered in this case prevents Seirus from seeking an *ex parte* reexamination of the D'093 patent. The *ex parte* reexamination statute reads:  "***Any person*** at ***any time*** may file a request for reexamination by the office of ***any claim*** of a patent . . . ."  *See* 35 U.S.C. § 302 (emphasis added).  Columbia asks this Court to rewrite this clear statutory language and prohibit Seirus from requesting reexamination simply because Seirus agreed not to challenge the validity of the D'093 patent ***in the present litigation***.  Contrary to Columbia's argument, Seirus's agreement has no effect on a challenge to invalidity in a reexamination proceeding.   Nothing in the judgment even contemplates future litigation or proceedings before the PTO, much less evinces the "clear intent" required for such a judgment to preclude such challenges.  *See*, *e.g.*, *Ecolab, Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1376 (Fed. Cir. 2002) (holding that "a party does not waive its right to challenge the validity of a patent as to future accused products absent a clear intent to do so" in a settlement agreement or consent judgment).  Seirus stipulated to a summary judgment that the D'093 patent "has not been proved invalid."  Under Federal Circuit precedent, that is not enough to preclude Seirus from challenging the validity of the D'093 patent in other proceedings.

It would be improper and inequitable to preclude a party that decided to drop a patent validity challenge in district court from exercising its right to challenge validity in the United States Patent & Trademark Office ("PTO").  The interests of judicial economy favor streamlining cases for discovery and trial.  But these same interests should not, and cannot, collaterally penalize a litigant by precluding an administrative proceeding it may choose to pursue on an issue carved out of a federal lawsuit.  Here, Seirus elected to streamline the litigation by stipulating ***in this case*** that the D'093 patent is ***not invalid***—that was not a concession that the patent is valid, and Seirus did

SEIRUS' RESPONSE IN OPPOSITION TO COLUMBIA'S MOTION FOR TEMPORARY
RESTRAINING ORDER AND INJUNCTIVE RELIEF
Case No. Case No. 3:17-cv-01781

1  not surrender its right to file an *ex parte* reexamination in an administrative proceeding

2  before the PTO.

3  Accordingly, in the absence of any agreement to the contrary, a final judgment

4  of no invalidity does not preclude reexamination, regardless of whether it was by

5  stipulation, judicial order, or the result of a jury verdict.  Simply put, Congress

6  specifically rejected the application of estoppel or *res judicata* principles in the

7  context of *ex parte* reexamination.  As the Federal Circuit has recognized, the

8  reexamination statute's "language and legislative history, as well as the differences

9  between" reexamination and district court proceedings, all indicate that "Congress did

10  not intend a prior court judgment upholding the validity of a claim to prevent the PTO

11  from finding a substantial new question of validity regarding an issue that has never

12  been considered by the PTO."  *In re Swanson*, 540 F.3d 1368, 1378 (Fed. Cir. 2008).

13  Indeed, the Federal Circuit has routinely recognized that a final judgment of no

14  invalidity in a district court does not prevent parties to that judgment from later

15  seeking *ex parte* reexamination, nor does it preclude the possibility that the PTO may

16  reach a different finding from the district court.  *See*, *e.g.*, *In re Baxter*, 678 F.3d 1357

17  (Fed. Cir. 2012) (affirming a PTO finding of unpatentability after, in a previous

18  appeal, the court affirmed a judgment of no invalidity from a district court proceeding

19  involving the party who requested reexamination).

20  Columbia is also wrong on the other aspects of the injunction analysis.

21  Columbia's claimed irreparable injury is far too removed for the action it seeks to

22  enjoin for the claimed harm to be sufficiently concrete.  On the other hand, the harm

23  suffered by Seirus is immediate and concrete as it would have to pay a judgment of

24  millions on a patent that it believes the PTO will find invalid.  It is for this very reason

25  that the Supreme Court has recognized that the public interest favors allowing

26  challenges to patents.  Parties like Seirus "may often be the only individuals with

27  enough economic incentive to challenge the patentability of an inventor's discovery.

28

1   If [Seirus is] muzzled, the public may continually be required to pay tribute to would-

2   be monopolists without need or justification." *See Lear, Inc. v. Adkins*, 395 U.S. 653,

3   670 (1969).   Thus, there is a strong public interest in ridding the books of invalid

4   patents that would otherwise give patent owners monopolies over areas that should be

5   free and open for competition, and public use and consumption.   This public interest

6   militates strongly in Seirus' favor.   Columbia's motion should therefore be denied.

7                                        **BACKGROUND**

8   **I.     Background of the Consent Judgment**

9          Columbia's motion relates to the "Judgment of Validity of U.S. Patent

10  D657,093 Pursuant to FRCP Rule 54(b)" entered on the 17th of March, 2016.

11  Although inaptly named, this judgment did not forever and finally deem the D'093

12  patent "valid."   The text of the judgment itself states that the patent "has not been

13  proved invalid," not that the patent "is valid."   Dkt. 81.   Moreover, just as a jury does

14  not decide that a defendant is "innocent" in a criminal trial, patent litigation can never

15  find that a patent is "valid."   The correct judgment concerning the validity of a patent

16  in a district court case should be a judgment of "no invalidity," meaning that, in that

17  particular case, the defendant has not met his or her burden of demonstrating by clear

18  and convincing evidence that the patent is invalid over whatever prior art was at issue

19  in that case.   *See*, *e.g.*, *Swanson*, 540 F.3d at 1377 (explaining that if this statutory

20  burden is not met, "courts do not find patents 'valid,' only that the patent challenger

21  did not carry the 'burden of establishing invalidity in the *particular* case before the

22  court.'") (internal quotation marks and citations omitted) (emphasis in original)

23         Notably, this judgment was not accompanied by any settlement or other

24  contractual agreement between the parties.   By stipulating to the judgment, Seirus did

25  not agree to never challenge the validity of the D'093 patent, nor did Seirus admit that

26  the patent is valid.   The stipulation and judgment contains no language precluding

27  challenge by reexamination, or a promise by Seirus to forego its right to pursue

28

1   invalidity in the PTO—and Columbia submits no evidence of the sort, because none
2   exists.  Moreover, the stipulated judgment does not say anything about the merits
3   concerning the patent's validity, including lacking any identification or discussion of
4   prior art, which would be a basis of challenge in reexamination.  Rather, for strategic
5   reasons, the judgment simply reflects the reality that Seirus decided not to maintain
6   its challenge to the validity of the D'093 patent *in this case*.

7   **II.    Background Information about *Ex Parte* Reexaminations**

8        Some background information on PTO procedures may be helpful.  As the
9   Court is aware, a patent is a federally-granted monopoly for an invention issued by
10  the PTO.  To obtain a patent, a party submits a patent application, which is then
11  reviewed for novelty, non-obviousness, and the other requirements of the Patent Act
12  by the PTO.  After this initial period of examination, should the patentee prevail in
13  demonstrating entitlement to a patent, the PTO issues the patent, which is then entitled
14  to a "presumption of validity" in district court.  *See*, *e.g.*, 35 U.S.C. § 282; *see also*
15  *generally Microsoft Corp. v. I4I Ltd. Partn.*, 564 U.S. 91, 96 (2011).

16       The Patent Act, however, also provides for a number of mechanisms for the
17  PTO to review its initial grant of a patent.  For example, as implemented by the
18  America Invents Act, a party may petition the PTO for an "*inter partes*" review of the
19  patent.  *See generally* 35 U.S.C. § 311 et seq.  In this procedure, a party petitions the
20  PTO for additional review of the patent, and the PTO decides whether to institute such
21  review based on whether the party has demonstrated a likelihood of demonstrating
22  that claims of a patent should not have issued, i.e., are unpatanable, based on a limited
23  type of prior art.  *See* 35 U.S.C. § 311(b).  If the petition is instituted, both the
24  petitioner and patent owner make arguments to the Board, and the Board decides
25  whether the claims should have issued, using a different standard for claim
26  construction and a different burden of proof from that used in district court because
27  there is no presumption of validity before the PTO.  *See generally* 35 U.S.C. § 318;

28

35 U.S.C. § 316(e); *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2140 (2016). Notably, because this procedure before this PTO is "*inter partes*" and is, in essence, a mini trial concerning the validity of a patent, Congress elected to place limits on who and when a party may bring such a petition. *See* 35 U.S.C. § 315(a) (prohibiting, for example, a party from bringing an IPR if the party has been sued more than one year prior to its petition).

Unlike *inter partes* review, *ex parte* reexamination involves an initial request for reexamination (which can be made by a challenger like Seirus), and then the proceeding continues with just the patent owner and the PTO participating. As the name "*ex parte*" would imply, the PTO independently conducts a review of an issued patent—without involvement of the requestor—once it decides whether a "request" for a reexamination submitted to the PTO raises a "substantial new question of patentability affecting any claim of a patent." 35 U.S.C. § 304. And, also unlike *inter partes* review, Congress did not place any limits on who or when a request for reexamination may be brought based on previous litigation. The statute broadly provides that "*[a]ny person at any time* may file a request for reexamination," even including the patent owner. *See* 35 U.S.C. § 302 (emphasis added). In fact, the statute even provides that *ex parte* reexamination may be instituted *sua sponte* by the Office, 35 U.S.C. § 304. "In a very real sense, the intent underlying reexamination is to 'start over' in the PTO with respect to the limited examination areas involved, and to re-examine the claims, and to examine new or amended claims, as they would have been considered if they had been originally examined in light of all of the prior art of record in the reexamination proceeding." *In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985). In essence, *ex parte* reexamination is a sort of quality-control mechanism by which the PTO makes sure that the monopolies its grants should be entitled to the presumption of validity those grants are afforded in district court.

1

## LEGAL STANDARD

2    An injunction is an "extraordinary remedy" that can never be granted "as of

3    right." *Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "Equitable

4    relief" like an injunction "is not granted as a matter of course and a court should be

5    particularly cautious when contemplating relief that implicates public interest."

6    *Salazar v. Buono*, 559 U.S. 700, 714 (2010) (internal citations omitted).  It has also

7    long been the rule that courts should be particularly cautious when entering

8    injunctions that would "interfere with or try to restrain" proceedings in another forum,

9    except in certain circumstances not relevant here. *See*, *e.g.*, *Donovan v. City of Dallas*,

10   377 U.S. 408, 412 (1964).[1]

11   To demonstrate entitlement to an injunction, the requesting party must be (1)

12   correct on the merits; (2) demonstrate that it will suffer irreparable harm in the absence

13   of an injunction; (3) that the balance of the equities are in its favor; and (4) that an

14   injunction is in the public interest.  *See Winter*, 555 U.S. at 20; *Amoco Prod. Co. v.*

15   *Vill. of Gambell*, 480 U.S. 531, 546 n.14 (1987).  Contrary to Columbia's assertion

16   that "once actual success on the merits is established, a party is entitled to relief as a

17   matter of law irrespective of the amount of irreparable injury may be shown," *see* Mot.

18   at 7, the Supreme Court has rejected the application of rules of thumb that would lead

19   to the automatic grant of injunctions.  *See eBay Inc. v. MercExchange, L.L.C.*, 547

20   U.S. 388, 394 (2006) (rejecting the Federal Circuit's rule that called for near-

21   automatic injunctions to issue after success on the merits).  Notably, the reasoning

22   Columbia asks this Court to adopt was explicitly overruled by the Supreme Court.  In

23   *Winter*, the Supreme Court reviewed the 9th Circuit's rule that, once success on the

24   merits had been established, an injunction may be entered based on a mere

25   "possibility" of irreparable harm.  *See* 555 U.S. at 21.  The Supreme Court rejected

26

27   _____

[1] As explained in this case, "[a]n exception has been made in cases where a court has
28   custody of property, that is, proceedings in rem or quasi in rem." *See id.*

this standard and held that, in every case, a party asking for an injunction **must show that irreparable harm is likely**, not merely possible. *See id.* at 22. As the Court explained, entering an injunction based on a possibility of irreparable harm "is inconsistent with [the Court's] characterization of injunction relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.*

Following *Ebay* and *Winter,* this Court and others have correctly explained that to obtain an injunction, a party must make a "clear showing" of **all** "required" elements. *Giftango, LLC v. Rosenberg*, 925 F. Supp. 2d 1128, 1138 (D. Or. 2013) (Hernandez, J.); *see also Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (a "'preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion'").

## ARGUMENT

### I.   Columbia is Wrong on the Merits: The Consent Judgment Does Not Preclude Seirus from Requesting Additional Examination by the PTO

#### A.   The Consent Judgment is Not a Contract That Forever Resolves the Validity of the D'093 Patent Between the Parties

Columbia argues that "[i]t is well established that a consent judgment on patent validity is a binding settlement agreement and is given *res judicata* effect as to the parties to the judgment." Columbia is flatly wrong. To be clear, Seirus does not dispute that the partial judgment entered in this case prevents it from challenging the validity of the D'093 patent in this case. For example, Seirus would have been barred from raising invalidity of the D'093 patent at trial. However, simply because Seirus stipulated that the D'093 patent "has not been proved invalid" in this action does not mean that Seirus is forever barred from challenging the validity of the D'093 in future litigations or in administrative proceedings.

SEIRUS' RESPONSE IN OPPOSITION TO COLUMBIA'S MOTION FOR TEMPORARY
RESTRAINING ORDER AND INJUNCTIVE RELIEF
Case No. Case No. 3:17-cv-01781

1    Columbia's motion only tells half the story.  Columbia is correct that the

2    Federal Courts favor policies that encourage settlement.  *See Baseload Energy, Inc. v.*

3    *Roberts*, 619 F.3d 1357, 1361 (Fed. Cir. 2010).  But both the Supreme Court and the

4    Federal Circuit have recognized a countervailing policy in allowing challenges to the

5    validity of the monopolies granted by the issuance of a patent.  *See id.*; *see also Lear*,

6    395 U.S. at 670 (recognizing that parties like Seirus may be the only ones financially

7    incentivized to challenge the validity of a patent and that there is an "important public

8    interest in permitting full and free competition in the use of ideas").  These two

9    interests "***must*** be balanced." *Baseload Energy*, 619 F.3d at 1362 (emphasis added);

10   *see also Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1368 (Fed. Cir. 2001) ("the

11   important policy of enforcing settlement agreements and *res judicata* must themselves

12   be weighed against the federal patent laws' prescription of full and free competition

13   in the use of ideas that are in reality a part of the public domain"); *Foster v. Hallco*

14   *Mfg. Co., Inc.*, 947 F.2d 469, 474 (Fed. Cir. 1991) (recognizing an important "policy

15   in favor of precluding restrictions on attacks on patent validity" that must be balanced

16   against any policy favoring settlement); *Warner-Jenkinson Co. v. Allied Chem. Corp.*,

17   567 F.2d 184, 188 (2d Cir. 1977) ("There is certainly a public interest in the avoidance

18   of litigation through the peaceful resolution of lawsuits. In the patent field, however,

19   this interest is to be balanced against the public interest in having invalid patents

20   cleared away through litigation.")  As a result of this balancing, the Federal Circuit

21   has held that "a party does not waive its right to challenge the validity of a patent as

22   to future accused products absent a clear intent to do so."  *Ecolab*, 285 F.3d at 1376

23   (applying this principle in the context of a second lawsuit on new products; discussed

24   in more detail below); *see also Baseload Energy*, 619 F.3d at 1362("invalidity and

25   unenforceability claims may be released, but ***only if the language of the agreement***

26   ***or consent decree is clear and unambiguous***") (emphasis added); *Foster*, 947 F.2d at

27   481 (Fed. Cir. 1991) ("we adopt the position that provisions in a consent judgment

28

1   asserted to preclude litigation of the issue of validity in connection with a new claim

2   must be construed narrowly").

3        Here, the entirety of the judgment reads:

> Pursuant to the joint motion of the parties, and pursuant to FRCP Rule 54(b),
>
> IT IS HEREBY ORDERED AND ADJUDGED that U.S. Patent D657,093 has not been
> proved invalid and that Defendant Seirus Innovative Accessories, Inc.'s counterclaim and
> defense of invalidity associated with that patent are dismissed with prejudice and without costs
> or attorneys' fees to either party.
>
> Dated this __1__ day of March, 2016.
>
> *Marco Hernandez*
> MARCO A. HERNANDEZ
> United States District Judge

13        Columbia repeatedly characterizes the judgment as a "contract" wherein Seirus

14   stipulated that the patent is "valid." *See, e.g.*, Mot. at 4, 8. As any plain reading of

15   the judgment will reveal, Columbia's assertion has no basis in fact. The judgment

16   clearly states that the D'093 patent "has not been proved invalid," a reference to a

17   specific factual determination at issue in this proceeding alone. Agreeing that the

18   patent has not been proved invalid does not speak to future proceedings or the validity

19   *per se* of the patent, and the difference here is important. *See, e.g., Swanson*, 540 F.3d

20   at 1377 (explaining that if a party in litigation has not met its burden of proving a

21   patent valid, "courts do not find patents 'valid,' only that the patent challenger did not

22   carry the 'burden of establishing invalidity in the *particular* case before the court.'")

23   (internal quotation marks and citations omitted) (emphasis in original). In fact, the

24   judgment makes this point specifically—after stating only that the patent "has not

25   been proved invalid," it dismisses **only** Serius' counterclaim and defense of invalidity

26   associated with that patent. As written, nothing in this judgment precludes a future

27   challenge to the validity of the D'093 patent in a different proceeding, especially an

28

1  *ex parte* reexamination before the PTO.  The judgment in no way divests Seirus of its
2  right to challenge the patent's validity in an administrative reexamination by the
3  PTO—a vehicle that Congress created, and broadly enabled for pursuit by "any person
4  at any time" (35 U.S.C. § 302), to advance the public interest in the elimination of
5  invalid monopolies.

6       In circumstances such as these, the Federal Circuit has held that a consent
7  judgment does not forever bar a party from challenging the validity of a patent.  For
8  instance, the Federal Circuit has explicitly held that language even more forceful than
9  that used in the consent judgment here does ***not*** evidence a "clear intent" to give up
10 future challenges to validity.  In *Foster*, the parties had previously agreed to a consent
11 judgment that declared that the asserted patents were "valid and enforceable in all
12 respects."  947 F.2d at 481.  Like Columbia here, the patentee in that case argued that
13 future challenges to validity were barred because the consent judgment was "binding
14 upon and constitutes res judicata between the parties."  *Id.*  (quoting the patentee's
15 argument) (internal quotation marks omitted).   The Federal Circuit concluded
16 otherwise, holding that the agreement was "ambiguous with respect to barring" future
17 validity challenges.  *See id.* at 482.[2]  Similarly, in *Ecolab*, the Federal Circuit faced a
18 situation where a defendant from an earlier lawsuit was sued again on different
19 products.   The earlier suit had ended with a consent judgment declaring that an
20 asserted patent is a "valid patent." Nonetheless, the Federal Circuit found that this
21 consent judgment did not preclude the defendant from being able to assert invalidity
22 against that same patent in the subsequent action, explaining that "[g]reater clarity
23 than this is required to foreclose" future validity challenges.  285 F.3d at 1377.

24

25 [2] In *Foster*, the Federal Circuit remanded for the district court to consider extrinsic
26 evidence as to the parties' intent in entering the consent agreement.  Columbia has not
27 presented any extrinsic evidence that the parties intended to preclude future litigation
28 or administrative proceedings here, nor could it, as that was never the intent of the
   parties.

SEIRUS' RESPONSE IN OPPOSITION TO COLUMBIA'S MOTION FOR TEMPORARY
RESTRAINING ORDER AND INJUNCTIVE RELIEF
Case No. Case No. 3:17-cv-01781

1       This is especially true for an *ex parte* reexamination proceeding before the PTO,

2   which Columbia specifically targets in its motion.   Columbia cites the ***dissent*** from

3   *Joy Mfg. Co. v. Nat'l Mine Serv. Inc.*, 810 F.2d 1127 (Fed. Cir. 1987), to support its

4   argument that Seirus should be barred from petitioning the PTO for *ex parte*

5   reexamination.   *See* Mot. at 9.   But the ***majority*** in that case applies the rule that *ex*

6   *parte* reexamination should ***not be barred*** unless clearly and unambiguously barred in

7   a settlement agreement.   In that case, the parties had previously settled infringement

8   litigation, and the accused infringer agreed to "not file any suit in any United States

9   Court or any Court in any foreign country challenging or contesting the validity of the

10  Licensed Patents."   *Id.* at 1129.   The accused infringer, after entry of judgment,

11  petitioned the PTO for *ex parte* reexamination of the patent, and the patent owner

12  moved to enforce the settlement to bar that challenge.   *See id.*   The district court denied

13  the motion, and the Federal Circuit affirmed, reasoning that the settlement agreement

14  did not prevent the accused infringer from petitioning for reexamination because "a

15  request for administrative reexamination by the United States Patent and Trademark

16  Office" is not the same thing as "filing a suit in a United States Court."   *Id.* at 1129–

17  30.

18      Columbia also cites *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1363 (Fed.

19  Cir. 2001).   But, unlike the judgment entered here, the settlement agreement in that

20  case specifically contemplated future validity challenges. The license agreement

21  entered into by the parties in that case clearly and unambiguously provided that the

22  accused infringer "agrees not to challenge or cause to be challenged, directly or

23  indirectly, the validity or enforceability of the [asserted patents] in any court or other

24  tribunal, including the United States Patent and Trademark Office."   *Id*. at 1364.   No

25  similar language is present in the judgment entered in this case.

26      Lastly, Columbia cites a 1982 district court case from Texas that was decided

27  the year the Federal Circuit came into being, and shortly after the *ex parte*

28

1    reexamination statute was put into place.  *See* Motion at *e.g.*, 2, citing *Houston Atlas,*
2    *Inc. v. Del Mar Sci., Inc.*, 1982 U.S. Dist. LEXIS 10046, *19 (N.D. Tex. 1982).  In
3    that case, the parties entered into a comprehensive settlement agreement, which
4    included entry of a Judgment that specifically stated the parties agreed that the claims
5    1, 2, and 4 of the asserted patent "are valid as between the parties."  *Houston Atlas* at
6    *3.  This stands in stark contrast to the judgment here, which states that the patent
7    "has not been proved invalid" and simply dismisses Seirus' counterclaims and
8    defenses as to invalidity.  This nearly-forty-year-old district court decision is also in
9    direct conflict with the subsequent Federal Circuit law discussed above, and should
10    not be followed.[3]

11        Lastly, Columbia makes much of the words "with prejudice" in the consent
12    judgment.  However, the words "with prejudice" simply indicate that the judgment of
13    no-invalidity was meant to be a final judgment with respect to the claims brought in
14    this case.  As the Federal Circuit has explained, "[a]n assertion of invalidity of a patent
15    by an alleged infringer is not a 'claim' but a defense to the patent owner's 'claim'" of
16    infringement, regardless of whether invalidity is asserted as an affirmative defense or
17    as a counterclaim.  *Foster*, 947 F.2d at 479.  As in *Foster* and in *Ecolab*, the judgment
18    here simply resolved the defense of validity with respect to the claims at issue in this
19    case, namely, Columbia's claim that certain Seirus products infringe its patent. Thus,
20    the judgment here is inexorably tied to the actual claims in this case and does not apply
21    to any future claims that might arise between the parties, and certainly does not
22    preclude Seirus from seeking administrative review in a totally unrelated process.

23

24

25

26    _____
      [3] Indeed, this case has ***never*** been cited for the proposition that Columbia cites it for
27    here.  The only proposition for which this case has been substantively cited is that a
      district court cannot enjoin the PTO from reexamining a patent.
28

1

### B.   Absent an Explicit and Clear Agreement to the Contrary, a Final Judgment of No Invalidity Does Not Prevent a Party from Seeking Reexamination

The language of the *ex parte* reexamination statute is clear: "*[a]ny person at any time* may file a request for reexamination by the Office of any claim of a patent on the basis of any prior art cited under the provisions of section 301." 35 U.S.C. § 302. Unlike provisions governing other post-grant proceedings before the office such as *inter partes* review, the *ex parte* reexamination statute does not contain any estoppel provisions that would, for example, prevent a party from challenging the validity of a patent depending on whether that party has been involved in district court litigation involving the patent. *Cf.* 35 U.S.C. § 315(a)(1) ("An inter partes review may not be instituted if, before the date on which the petition for such a review is filed, the petitioner or real party in interest filed a civil action challenging the validity of a claim of the patent."). Notably, Congress left this scheme in place for *ex parte* reexaminations even as it was overhauling other aspects of post-patent-grant review, including adding ***other*** limitations to a party's ability to seek *ex parte* reexamination. *See* 35 U.S.C. § 315(e)(1) (providing that a party "may not request or maintain a proceeding before the Office with respect to that claim on any ground that the petitioner raised or reasonably could have raised during that inter partes review"). Simply put, Congress specifically declined to implement estoppel or *res judicata* principles based on district court litigation in the context of *ex parte* reexamination because it didn't write any into the amended statute.

Accordingly, the PTO's implementing regulations governing *ex parte* reexamination explicitly recognize that "[t]he only 'person' who is barred from filing a request for ex parte reexamination of a patent under 35 U.S.C. 302 is one who is barred from doing so by the estoppel provisions" of the America Invents Act relating to petitions for other reviews by the PTO. *See* Manual of Patent Examining

Procedure[4] ("MPEP") § 2212.[5]   Like the statute, nothing in the PTO regulations suggest that *res judicata* or any other form of estoppel based on a district court proceeding would prevent further examination by the PTO.   In fact, the PTO has specifically stated that "[t]he doctrine of *res judicata* based on a court holding in an infringement proceeding is not applicable in reexamination proceedings . . . ." *See* Manual of Patent Examination Procedure § 2259.

The reasoning for this is plain.   First, an *ex parte* reexamination is not an adversarial proceeding—once a party makes his or her request to the PTO, the party is no longer involved.   The requestor has no rights of appeal, nor any ability to influence the outcome of the reexamination beyond making the original request.   The PTO—not the petitioner—conducts the reexamination of the patent claims.   Indeed it makes very little sense to talk about *res judicata* in the context of reexaminations because reexamination is simply an extension of the original examination of the claims.   The PTO, not the petitioner, is the party conducting the examination, and the PTO is not a party to district court validity proceedings.   *See In re Texas Holdings Corp.*, 498 F.3d 1290 (Fed. Cir. 2007) (holding that the PTO was not bound by an earlier district court ruling based on *res judicata* because "the PTO was not even a party to the earlier district court litigation and cannot be bound by its outcome."); *see*

---

[4]  For reference, the Manual of Patent Examination Procedure is a manual for both PTO employees and for the public as to how the Patent Office examines and re-examines patents that is derived from both PTO regulations and Federal Circuit rulings.   The MPEP is available on the PTO's website at https://www.uspto.gov/web/offices/pac/mpep/index.html.

[5]  As noted above, the AIA added some limitations to who may request an *ex parte* reexamination based on whether that person had previously requested *inter partes* review or another form of post-patent-grant review, simply called post-grant review. *See id.*

SEIRUS' RESPONSE IN OPPOSITION TO COLUMBIA'S MOTION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF
Case No. Case No. 3:17-cv-01781

1   *also Etter*, 756 F.2d at 859 (noting that in *ex parte* reexamination, "no litigating

2   adversary is present").[6]

3         Second, *ex parte* reexamination is nothing like a Court proceeding, and it is not

4   unusual or inconsistent for the PTO to reach a conclusion different from a district

5   court proceeding.  As discussed above, a party must prove a patent invalid in district

6   court by clear and convincing evidence because of a presumption of validity.  *See* 35

7   U.S.C. § 282.  In the PTO, no such presumption applies.  As the Federal Circuit has

8   explained:

9           That one challenging validity in court bears the burden

10          assigned by § 282, that the same party may request
    reexamination upon submission of art not previously cited,

11          and that, if that art raises a substantial new question of
    patentability, the PTO may during reexamination consider

12          the same and new and amended claims in light of that art

13          free of any presumption, are concepts not in conflict. On
    the contrary, those concepts are but further indication that

14          litigation and reexamination are distinct proceedings, with

15          distinct parties, purposes, procedures, and outcomes. In the
    former, a litigant who is attacking the validity of a patent

16          bears the burden set forth in § 282. In the latter, an

17          examiner is not attacking the validity of a patent, but is
    conducting a subjective examination of claims in the light

18          of prior art.

19
20  *Etter*, 756 F.2d at 857–58.

21        It is for this very reason that the Federal Circuit has repeatedly affirmed PTO

22  reexamination   decisions   finding   claims   unpatentable,   even   when   those

23  _____

24  [6]  In fact, the party requesting reexamination need not actually identify themselves to
    the PTO.  Per PTO regulations, "[t]he rules do not require ex parte reexamination

25  requesters to identify themselves upon the filing of the request."  Manual of Patent

26  Examination   Procedure   § 2214,   *available   at*
    https://www.uspto.gov/web/offices/pac/mpep/s2214.html.  It hardly makes sense to

27  apply a doctrine that prohibits a party from initiating litigation to administrative

28  procedure that does not even require that the party identify itself.

1    reexaminations were requested by a party who was previously involved in litigation

2    resulting in a final judgment of no invalidity.  *See*, *e.g.*, See *In re Baxter Intern., Inc.*,

3    678 F.3d 1357, 1360 (Fed. Cir. 2012); *In re Constr. Equip. Co.*, 665 F.3d 1254, 1256

4    (Fed. Cir. 2011). As the Federal Circuit has explained, the reexamination statute's

5    "language and legislative history, as well as the differences between" reexamination

6    and district court proceedings, all indicate that "Congress did not intend a prior court

7    judgment upholding the validity of a claim to prevent the PTO from finding a

8    substantial new question of validity regarding an issue that has never been considered

9    by the PTO."  *Swanson*, 540 F.3d at 1378.  A contrary holding "would allow a civil

10   litigant's failure to overcome the statutory presumption of validity to thwart Congress'

11   purpose of allowing for a reexamination procedure to correct examiner errors, without

12   which the presumption of validity never would have arisen."  *Id.*

13        For example, in one such case, the Federal Circuit had previously heard an

14   appeal from a district court case and had affirmed the judgment of no-invalidity of the

15   patent at issue.  *See Baxter*, 678 F.3d at 1360.  The losing party in the original appeal

16   requested reexamination of the same patent by the PTO, and the PTO eventually found

17   all challenged claims unpatentable.  *See id.* at 1361.  The Federal Circuit affirmed the

18   PTO's decision, explaining "the PTO in reexamination proceedings and the court

19   system in patent infringement actions take different approaches in determining

20   validity and on the same evidence could quite correctly come to different

21   conclusions."  *Id.* at 1367; *see also Constr. Equip. Co.*, 665 F.3d at 1256  (similarly

22   upholding a PTO finding of unpatentability from an *ex parte* reexamination brought

23   by an adjudged infringer despite a previous judgment of no invalidity).

24        In short, a previous final judgment of no invalidity does not preclude a later

25   finding of unpatentability by the PTO during reexamination proceedings.  Similarly,

26   a previous consent judgment that a patent is not invalid does not preclude a later

27   finding of unpatentability by the PTO.  And, by the same token, Seirus should not be

28

SEIRUS' RESPONSE IN OPPOSITION TO COLUMBIA'S MOTION FOR TEMPORARY
RESTRAINING ORDER AND INJUNCTIVE RELIEF
Case No. Case No. 3:17-cv-01781

1  precluded from seeking to invoke a reexamination of the design patent since neither
2  the judgment nor any other document would bar such an action.

## II.   Each of the Other Injunction Factors Weighs in Favor of Seirus

As discussed above, Columbia is incorrect on the merits.  That is reason enough
to deny Columbia's motion without any need for diving into the equitable
considerations necessary for the grant of an injunction.  However, even if Columbia's
position were not meritless, an injunction should not issue because Columbia also fails
to show that the equitable factors weigh in favor of an injunction.

**Irreparable Harm.**  Columbia argues that it will suffer irreparable harm from
the PTO finding its patent invalid unless Seirus is enjoined from requesting
reexamination.  *See* Mot. at 9–10.  But multiple contingencies must occur before
Seirus's request would injure Columbia. Specifically, the PTO would have to institute
the proceedings and reach a finding of invalidity before Columbia would actually
suffer injuries from Seirus's request. Unless Columbia is willing to concede that its
patent is invalid, it is impossible to predict whether the Patent Office will decide to
institute ex parte reexamination, much less what the outcome of that proceeding might
be.

The circumstances Columbia offers show a possibility of injury, but are too
contingent to satisfy the likelihood of irreparable harm standard.  A movant seeking a
preliminary injunction must show that "irreparable injury is *likely* in the absence of
an injunction." *Winter*, 555 U.S. at 22 (emphasis added). It is not enough to show a
"possibility" of harm, as "a possibility of irreparable harm is inconsistent with [the]
characterization of injunctive relief as an extraordinary remedy that may only be
awarded upon a clear showing that plaintiff is entitled to such relief." *Id.*  For
example, this standard is not met if multiple contingencies must occur before injuries
would ripen into concrete harms. *See Caribbean Marine Servs. Co., Inc. v. Baldrige*,
844 F.2d 668, 675 (9th Cir. 1988) (finding that, where multiple contingencies must

17

occur before an injury would become a concrete harm, the injury was "too speculative to constitute an irreparable harm justifying injunctive relief"); *see also*, *e.g.*, *Advanced Micro Devices, Inc. v. S3 Graphics Co., Ltd.*, No. 11-965-LPS, 2011 WL 5402667, at *2 (D. Del. Nov. 8, 2011) (adverse outcome in ITC proceeding "simply too remote and speculative to establish irreparable harm" where proceedings were in progress and favorable outcome remained "at least possible"); *Leibowitz v. Smith Barney Inc.*, 863 F. Supp. 171, 173 (S.D.N.Y. 1994) ("mere possibility" of arbitration proceedings resulting in collateral estoppel against plaintiffs "too speculative and remote to justify the imposition of a preliminary injunction"); *Nat'l Union Elec. Corp. v. Emerson Elecs., S.p.A.*, 1975 WL 21094, at *4 (S.D.N.Y. Sept. 10, 1975) ("Until the Italian proceeding is concluded, it is sheer speculation for NUEC to predict its outcome, or the possibility of economic loss if the outcome is unfavorable to NUEC. Injunctive relief is not appropriate in a situation such as this, against prospective irreparable injury which at this point is entirely speculative and remote and may never occur.").

Applying this standard, the Federal Circuit has found that a patentee does not suffer irreparable harm when a party requests PTO review of its patent. In *IGT v. Aristocrat Techs., Inc.*, a patentee sought to enjoin an alleged infringer from petitioning the PTO for *inter partes* review, contending that it would suffer irreparable injury if its patents were found to be invalid. 646 Fed. Appx. 1015, 1017–18 (Fed. Cir. 2016). But, as the Federal Circuit explained, the alleged harm was far too removed from the action the patentee sought to enjoin. As here, in order for the alleged harm to occur, the PTO had to both institute proceedings and ultimately vindicate the petitioner's position. The Federal Circuit explained: "these circumstances are far too contingent to satisfy the likelihood of irreparable harm standard." *Id.* at 1019. Because, like the patentee in *IGT*, Columbia can only point to

1    the possibility of irreparable harm only if everything at the PTO goes against it, no

2    injunction can issue.[7]

3        **Balance of the Equities.**   The balance of the equities weighs strongly in favor

4    of Seirus.  In considering the balance of equities, the Court must weigh "the competing

5    claims of injury and . . . consider the effect on each party of the granting or withholding

6    of the requested relief." *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531,

7    542 (1987). As discussed above, Columbia does not suffer any real concrete harm in

8    the absence of an injunction.   Moreover, if Columbia's patent is indeed valid,

9    Columbia will suffer no harm at all, as the PTO will simply either deny Seirus's

10   request or vindicate Columbia's position during reexamination.  If, on the other hand,

11   Columbia's patent is in fact invalid, then Seirus will suffer immense harm by having

12   to pay a judgment of millions on an invalid patent, and from having to refrain from

13   selling products that are precluded by an invalid monopoly.  When the harm of having

14   to pay a judgment on an invalid patent is weighed against the minimal harm suffered

15   by Columbia, the balance of the equities tips heavily in favor of Seirus.[8]

16

17   [7] To the extent that Columbia will claim that it suffers irreparable harm by having to
     defend its patent at the PTO, that too cannot satisfy the irreparable harm standard.  *See*
18   *Li v. A Perfect Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2011 WL 2293221, at *4
19   (N.D. Cal. June 8, 2011) ("Many courts . . . have concluded that incurring litigation
     expenses does not amount to an irreparable harm."); *see also Los Angeles Mem'l*
20   *Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980)
21   ("[M]onetary injury is not normally considered irreparable.").

22   [8] The balance of the equities weighs further in favor of Seirus here because Columbia's
     motion publicly revealed information discussed during settlement talks that were, by
23   their very nature and by written non-disclosure agreement of the parties, highly
24   confidential.  Columbia should not be able to receive equitable relief when, in asking
     for that relief, it violates an agreement between the parties.   "It is one of the
25   fundamental principles upon which equity jurisprudence is founded, that before a
26   complainant can have a standing in court he must first show that not only has he a
     good and meritorious cause of action, but he must come into court with clean hands."
27   *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 244 (1933) (internal
     quotation marks omitted).

28

**Public Interest**.   The public interest also weighs against an injunction.   As discussed above, the Supreme Court has recognized an "important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain." *Lear*, 395 U.S. at 670. More recently, in *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1993), the Court recognized the "importance to the public at large of resolving questions of patent validity." *Id.* at 100. And in *In re Baker Hughes Inc.*, 215 F.3d 1297 (Fed. Cir. 2000), the Federal Circuit observed that "[t]he public interest lies in having valid patents upheld and invalid patents rendered invalid, and hence patents should be reexamined when a substantial question of patentability is raised." *Id.* at 1302; *see also Nestier Corp. v. Menasha Corp.-Lewisystems Div.*, 739 F.2d 1576, 1581 (Fed. Cir. 1984) ("There is a stronger public interest in the elimination of invalid patents than in the affirmation of a patent as valid . . . ."). Congress vindicated this strong public interest in creating an *ex parte* reexamination procedure that allows anyone to challenge the validity of an issued patent before the PTO.   The injunction Columbia seeks is directly contrary to this important public interest.

Here, Columbia's motion relies on nothing more than the consent judgment, which, as pointed out above, states in the body that the patent is not invalid—not that Seirus has conceded for all purposes and proceedings that the patent is valid.   The judgment goes on to dismiss the defense and counterclaims of invalidity—not to bind Seirus more broadly than this case.   Nowhere does it state, therefore, that Seirus is precluded from challenging the patent in subsequent litigation (which Seirus would be able to do under applicable law, if Columbia were to sue on new products, as described above).   Nor does it limit proceedings before the PTO, including *ex parte* reexamination.   Like the licensor in the Supreme Court's *Lear* case, "the equities of" the beneficiary of a consent judgment, here Columbia, "do not weigh very heavily when they are balanced against the important public interest in permitting full and free

competition in the use of ideas which are in reality a part of the public domain." 395 U.S. at 670. In other words, the public has a strong interest in removing what amounts to an illegal monopoly that may be used to stifle competition, remove ideas and designs from the public domain, and disgorge profits from the use and sale of products that should otherwise be fully and freely on the open market.

Moreover, in this case, Columbia has taken the position post-verdict that it can separately sue Seirus' customers for infringement of the design patent and force them to disgorge profits on the Seirus products they have sold. It has informed Seirus that it may pursue such actions. Accordingly, the public interest weighs even more heavily here, because the public will benefit even more from the potential invalidation of a patent that has been threatened against not just Seirus, but downstream customers. If Columbia is correct, and disgorgement of profits may be taken at every step of the supply and sales chain, then the public interest is paramount in extinguishing an illegal monopoly created by a design patent that takes profits from every level of the vertical and horizontal market for goods. Nothing conflicts more squarely with the principles of free market, a foundation of this country, than an illegal monopoly that can be exercised so widely and deeply.

Thus, the public interest alone weighs sufficiently to deny the injunction. When coupled with the merits, and the other equities, it becomes abundantly clear that Columbia has not, and cannot, make the requisite showing of entitlement to injunctive relief.

## **CONCLUSION**

For the reasons described above, Columbia's motion should be denied.

1    Dated:  November 29, 2017                    FISH & RICHARDSON P.C.

2

3                                                 By:  */s/ Christopher S. Marchese*
                                                      Christopher S. Marchese
4                                                     marchese@fr.com

5
                                                 Attorneys for Defendant, Seirus Innovative
6                                                 Accessories, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                 22

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 29, 2017, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ Christopher S. Marchese*
Christopher S. Marchese
marchese@fr.com

SEIRUS' RESPONSE IN OPPOSITION TO COLUMBIA'S MOTION FOR TEMPORARY
RESTRAINING ORDER AND INJUNCTIVE RELIEF
Case No. Case No. 3:17-cv-01781